## CASSELMAN vs. PACKARD, and others.

It is not the intention and meaning of the law exempting one-fourth of an acre of
ground in a city or village upon which the debtor lives, from forced sale on
execution, that all the buildings thereon and the portions of the lot on which

they are situated, whatever may be their character or for whatever purpose they were designed and used, should be exempt, merely because the debtor lives in one of them.

The exemption law has regard to the purpose for which the property is used, and no more of a lot in a city or village can be held as a homestead, than is actually occupied for that purpose, and stores and offices erected thereon, and rented by the debtor, with the portions of the lot on which they are situated, are not exempt from forced sale on execution.

APPEAL from the Circuit Court for *Monroe* County.

This action was instituted to set aside a sheriff's sale of certain portions of a village lot, situated in Sparta, Monroe county, owned by the plaintiff, and claimed by him as exempt from forced sale on execution; and to prevent the execution of a sheriff's deed in pursuance of such sale. The plaintiff obtained the relief which he sought for, by the judgment of the circuit court, and two of the defendants, the judgment creditors, at whose instance the sale in question was made, excepted to the decision of the circuit court, and appealed from its judgment. The case is fully stated in the opinion of the court.

*John J. Cole*, for appellant.

*Montgomery & Tyler*, for respondent.

*By the Court*, COLE, J. In this case there is a contest as to the extent of the exemption. The property is situated in the village of Sparta, Monroe county. The land does not exceed in quantity, a quarter of an acre. There are situated upon it, besides the dwelling house in which the respondent resides with his family, various other buildings, which are used and occupied for stores, ware-rooms, shops, school-rooms, offices, &c. The respondent rents those buildings for those purposes, and claims that the privilege of the homestead exemption applies to them. The circuit court sustained this view of the law.

We consider this decision clearly erroneous. We cannot believe the legislature ever intended that a person should hold

all the buildings which might be erected upon a quarter of an acre of ground in a city or village, whatever might be their character or for whatever purposes they were designed, under the homestead exemption law, merely because he might live in one of them. Such a construction seems to us most unreasonable. The statute exempts the given quantity of land, *with the dwelling house thereon and its appurtenances.* Of course the exemption of that quantity of land has regard to the purpose for which it is used. It was supposed that this amount of land might be convenient and necessary for the comfort and enjoyment of the dwelling house. Nor are we prepared to say that the entire quantity of land must be devoted exclusively to the use of the dwelling. In addition to the dwelling, a person perhaps might erect a small shop, or building of that character, on the lot, which he himself used and occupied for the purpose of his trade or business, without forfeiting the exemption. But it is not necessary to express any opinion upon that point in this case. For the testimony shows, that there were various buildings on the lot, which he rented for offices, stores, schools, &c., and it is very clear that these were not exempt.

We believe that all was reserved to the respondent, on the sale upon the execution, that the law allowed him; and we therefore think his complaint should have been dismissed.

The judgment of the circuit court must be reversed, and the cause remanded with directions to dismiss the complaint.

DIXON, C. J. The only difference between this case and that of *Phelps vs. Rooney,* 9 Wis., 70, and 12 Wis., 698, is the difference between the perpendicular and horizontal lines of division of land, and according to the views which I then entertained (12 Wis., 698,) I cannot but concur with my brethren here. I there endeavored to show, both on principle and authority that Rooney's premises should have been divided by horizontal lines, so as to have saved the homestead and permitted the residue to be sold under the mortgage. The doctrine for which I then contended, I think now, fully adopt-

ed by the court, the only ground of distinction being that the lines of division are perpendicular. This I believe to be untenable. Beside the authorities to which I then referred, I desire to call the attention of the profession to an article in the August number, 1862 (vol. 1, new series, vol. 10, old series, page 577) of the American Law Register, entitled, " *Horizontal Divisions of Land,*" and to the cases there cited. After stating the general rule, that land conveyed by description of the lot, or certain boundary lines, will, without further lines, include structures of any number and value, and mines of any depth, the writer gives his opinion in these words : " But this is only a result of a *prima facies* or presumption, not of any legal impossibility of severing the house from the land, or one story of it from another, or mines from the surface. Just as there may different owners of different cones, there may be different owners of different strata of the same cone. Different proprietorships of land may be bounded or defined by horizontal as well as perpendicular lines." This is a view of a writer who had evidently given the subject a very minute and thorough investigation. It seems to me extremely unreasonable, not to say absurd, to hold that the plaintiff, *Casselman*, shall now be deprived of so much of the " one-fourth of an acre " exempted by statute, as is occupied by the buildings used for " stores, warerooms, shops, school-rooms, office," &c, because it happens that such portions of the premises can be separated from the residence by perpendicular lines, when if he had chanced to so construct the buildings, that his dwelling had been a story above or below those used for these various purposes, the whole would have been exempt, and his possession and ownership undisturbed. The *use* is nothing, but the *form* of the use in everything in determining the question of exemption. I cannot but regard this as a most blind and unthinking devotion to mere form, with no shadow of substance. The plaintiff, desiring to retain the whole quarter acre, free from the claims of the creditors, at the time of con-

sulting the architect should also have consulted a lawyer, and then he could have so modeled his buildings as to occupy them for a dwelling and at the same time devote the greater part to any other use or uses he saw fit, without endangering his privilege under the statute.