Points decided.

RILEY GREGG AND ANGELINA GREGG, HIS WIFE, *v.* JOHN H. BOSTWICK AND RALPH ELLIS.

HOMESTEAD LEGISLATION.—In this State, the primary and sole object of legislation upon the subject of homestead exemption, is to secure the exemption of the homestead, with a limitation upon its value, and not the exemption of an amount of the real estate of the head of a family, of certain value, including the homestead.

WHAT CONSTITUTES THE HOMESTEAD.—The homestead consists of a quantity of land, together with the dwelling house thereon, and its appurtenances, not exceeding in value the sum of five thousand dollars.

IDEM.—In resolving the question, of what land the homestead consists, it is necessary to determine, as a matter of fact, first, what particular land has been occupied as a homestead, and, second, its value.

IDEM.— The particular land, and none other, which was actually occupied for homestead purposes by the claimant at the time of making the declaration of homestead, will be exempt under its operation. The declaration for which the statute provides, *ex proprio vigore,* does not impress upon the land the quality of homestead.

HOMESTEAD.— The word "homestead" is used in the Constitution and statute in its popular sense. It represents the dwelling house at which the family resides, with the usual and customary appurtenances, including outbuildings of every kind necessary or convenient for family use, and land used for the purposes thereof. If situated in the country, it may include a garden or farm ; if in a town or city, it may include one or more lots or blocks. It need not be compact in form, and is not measured by fences merely. The only tests are use and value.

HOMESTEAD AS A PLACE OF BUSINESS.—If a homestead should be used also as a place of business by the family, it will not, for that reason, cease to be a homestead, if the portion so used would be necessary or convenient for family use, independent of the business.

HOMESTEAD AS TO QUANTITY AND VALUE.—The "homestead," in respect to quantity merely, is unlimited ; and if what is actually used exceed five thousand dollars in value, the excess is not homestead under the statute, though it is such in fact. In such a case the statute prescribes the mode of procedure.

IDEM.—Where, prior to 1857, G. and family resided upon a part of Block Eighteen, in Napa City, consisting of Lots One, Two, Three and Four, with no fence thereon except upon the exterior lines of the block, it does not necessarily follow therefrom that the whole block was then used by them as a homestead. The actual extent of the homestead is measured by use and occupation as such, and not by imaginary or artificial lines.

IDEM.—Where, since 1857, G. and family had only occupied as a home, successively, different portions of Lot Three in said Block Eighteen, and in the month of March, 1862, were so occupying a particular portion of said lot bounded by lines of fences, which portion was of less value than five thousand dollars, and at the last named date G. made and recorded, regularly, his declaration of homestead upon the whole of said block ; *held,* that his homestead right was limited to the portion of Lot Three inclosed within said fence.

APPEAL from the District Court, Seventh Judicial District, Napa County.

This was a suit in equity against defendant Bostwick, a judgment creditor, and defendant Ellis, as Sheriff, to enjoin the execution sale of Block Eighteen, in Napa City, upon a judgment recovered by Bostwick against plaintiff, Riley Gregg. The plaintiffs claimed said property as their homestead, and therefore exempt from execution. The defendants denied all the material allegations of the complaint, except that they threatened and intended to sell said property upon said execution, and pleaded that it was by law subject to be so sold. There was an injunction issued, restraining the sale *pendente lite.* The cause was tried before the Court, which found the following facts and conclusions of law, to wit:

"1. That the plaintiffs were married prior to the year 1850.

"2. That in 1850 plaintiff Riley Gregg purchased Block Eighteen, comprising Lots One, Two, Three, and Four in Napa City.

"3. That plaintiffs, with their family, consisting of five children, resided upon a portion of Lot One in a house built by Riley Gregg, from 1850 until 1857 or '58. That in 1851 the whole of said block was inclosed with a fence by Gregg.

"4. That in 1857 or '58 they removed with their family from their dwelling on Lot One to a house built by Riley Gregg on the northeast corner of Lot Three, and that thereafter, in 1860, they again removed to another house on the northwest corner of Lot Three.

"5. That on the 21st day of March, 1862, plaintiffs regularly executed and recorded their declaration of homestead, claiming all of Block Eighteen as a homestead.

"6. That at that date they were still residing with their family on the northwest corner of Lot Three, in a house which stood upon a portion of said lot, which was ninety feet six inches on Coombs street (West) and sixty-six feet on Clay street (North), forming a parallelogram, which was inclosed

with a fence, and separated thereby from the remaining portions of Lot Three.

" 7. That at said date, March 21st, 1862, there were upon said Block Eighteen eight buildings besides the dwelling house in which plaintiffs then resided, to wit: On Lot One a cheap hall or gymnasium building; upon Lot Two a storehouse; upon Lot Three a dwelling house; and upon Lot Four five dwelling houses. That said houses were at that time, had been previous, and were subsequently and up to the present time used and occupied by tenants of Riley Gregg for various purposes, to wit: the hall or gymnasium for public exhibitions and as a political club room, and at the present time as a stable; the storehouse for mercantile purposes; and the dwelling houses as residences. That said buildings were not constantly so used and occupied, but were used and occupied in no other manner and for no other purposes. That they were separated from each other by fences, and were all separated from the parallelogram or lot of ground upon which stood the dwelling house in which plaintiffs resided.

" 8. That the value of the parallelogram or lot upon which plaintiffs resided, hereinbefore described, was at the time of filing the declaration and still is of less value than five thousand dollars.

" 9. That until the year 1857 there were no fences subdividing said Block Eighteen, nor inclosing any portion thereof, but that the whole was inclosed.

" 10. That between 1857 and March 22d, 1862, there were inclosures erected around subdivisions of said lots immediately adjacent to said dwelling houses and having no regard to the lines of said lots.

" 11. That on the 22d of March, 1862, Riley Gregg was the owner and in possession by himself or his tenants, of the whole of Block Eighteen, and at the time of the commencement of this suit such possession was held by him and his tenants, and that no sale nor alienation of any portion of said block had been made.

" And the Court finds as conclusions of law that the parallelogram or lot of ground upon which plaintiffs were residing at the time of filing their declaration of homestead, to wit: ninety feet six inches on Coombs street (West) and sixty feet on Clay street (North), was at that date impressed with the character of a homestead, and was and is exempt from seizure and sale under execution. That the remaining portion of Block Eighteen was not so impressed, did not at the time of said filing constitute any portion of the homestead of plaintiffs or either of them, and does not now, and that all of said remaining portion is subject to sale under execution on a proper judgment against Riley Gregg."

Whereupon judgment was entered in accordance with said conclusions of law.

The plaintiff moved for a new trial, and assigned as reasons therefor that said conclusions of law and judgment are not sustained by, but are contrary to, the said facts found, so far as therein any portion of Block Eighteen was held to be not exempt from execution; and that said findings and judgment are against law. The motion was denied by the Court, and from the said judgment and the order denying said motion, the plaintiffs appealed, and assigned for error that the Court erred in denying said motion, and that said judgment is against law.

*C. Hartson,* and *R. Crouch,* for Appellants.

In 1850, appellants with their family moved upon Block Eighteen as their residence. In 1851 they inclosed it all with a fence. At that time the whole block was of less value than five thousand dollars. They continued to reside on the block until March, 1862, when they filed their declaration of homestead, and at the date of this suit were still residing thereon. The residence of Gregg with his family upon Block Eighteen impressed it with the character of a homestead. (*Moss* v. *Warner,* 10 Cal. 296; *Cook* v. *McChris-*

*tian*, 4 Cal. 23; *Taylor* v. *Hargous*, 4 Cal. 268; *Clark* v. *Shannon*, 1 Nev. 568; *Goldman* v. *Clark*, 1 Nev. 608.)

Formerly the selection by the head of the family was evidenced by residence alone; now by a formal declaration in writing, acknowledged and recorded. Under the Act of 1860, as well that of 1851, the homestead is limited to no special use as essential to its preservation. There is no section prescribing the size of the house, or barn, or field, nor the extent of the inclosure around the house, nor the use to which any or all of the homestead shall be devoted. This has been left to the discretion of the husband. The only limitation is that of value. In this connection, as a proof that the intention of the Legislature was to limit the value of the homestead, and not to prescribe the mode of its use and enjoyment, we cite the third section of the Act of 1851, which reads as follows: " Whenever any levy shall be made upon the land or tenements of a householder, whose homestead has not been selected and set apart, such householder may notify the officer at the time of making such levy of what he regards as his homestead, with a description thereof, and the remainder alone shall be subject to sale under such levy."

*Rayle & Pendegast*, for Respondents, argued:

That the mere act of filing a homestead declaration, including premises other than those dedicated as a homestead under the statute of 1851, and at the time occupied by tenants and used for business purposes inconsistent with the appellants' claim of homestead, cannot be construed so as to include such premises as part of the homestead; and cited *Charless & Blow* v. *Lamberson*, 1 Iowa, 435; *Rhodes, Pegram & Co.* v. *McCormick*, 4 Iowa, 368; *Ackerly* v. *Chamberlin*, 16 Cal. 180; *Benson* v. *Aitken*, 17 Cal. 163.

That the homestead of appellants must be limited to the parallelogram, for that the family residence is restricted thereto and was at the time of filing the homestead declara-

tion. That premises devoted exclusively to business pur-
poses, and used and occupied by tenants, are not susceptible
of dedication as a homestead. That the declaration of home-
stead, under the amended Act of 1860, operates to give
record notice of the homestead claim, but does not dedicate
premises as a homestead not occupied as the family residence
or thereto appertaining. It follows, as appellants, at the
time of filing their homestead declaration, were residing with
their family upon no portion of Block Eighteen other than
the parallelogram, that no portion of the premises therein
described was impressed with the homestead characteristics,
except said parallelogram.

By the Court, SANDERSON, J.:

The Act in relation to homesteads provides that: "The
homestead, consisting of a quantity of land, together with
the dwelling house thereon and its appurtenances, not exceed-
ing in value the sum of five thousand dollars, to be selected
by the husband and wife, or either of them, or other head of
a family, shall not be subject to forced sale on execution, or
any final process from any Court, for any debt or liability
contracted or incurred after the passage of the Act to which
this is amendatory. Said selection shall be made by either
the husband or wife, or both of them, or other head of a
family, declaring their intention in writing to claim the same
as a homestead. Said declaration shall state that they or
either of them are married, or if not married, that he or she
is the head of a family; that they or either of them, as the
case may be, are, at the time of making such declaration,
residing with their family, or with the person under their
care and maintenance, on the premises, and that it is their
intention to use and claim the same as a homestead," etc.

The primary object of all legislation upon the subject of
homestead exemption is not, as claimed by counsel for the
appellants, to exempt from forced sale a certain amount of

the real estate of the head of a family, including the homestead, whether estimated by quantity or value, but to exempt the homestead, including quantity or value, within the limits specified. In some States the exemption does not exceed a certain quantity of land, while in others, as here, the exemption is limited to a certain value. But in neither case is quantity or value the primary object. They come into the account merely as restrictions or limitations upon the privilege. Where quantity is made the limit, the homestead may consist of the whole quantity named or less, at the election of the party who claims the benefit of the exemption. So where value is made the limit, the homestead may reach in value the figure named, or it may stop short. Hence, neither quantity nor value can be taken into account as tests as to what the homestead is in fact in a given case; for they, in no just sense, enter into the definition of a homestead, either in the abstract or within the meaning of the statute. They do not come into action until after the homestead has been ascertained by other tests, and then they operate only as limitations. If the homestead when ascertained exceeds the quantity named, where the limitation is by quantity, it must be reduced by cutting off the excess; or if it exceeds the value named, where the limitation is by value, as in this State, it must be divided, if it can be done without material injury to the homestead, or if not, it must be sold and the proceeds to the value named taken in lieu thereof. (Sec. 3.)

If we assume, as claimed by counsel for appellants, "that the primary object of the Legislature was the exemption from sale of a quantity of land not exceeding in value five thousand dollars, including the dwelling house and its appurtenances," the conclusion for which they contend follows as a matter of course, and the argument ends where it commenced. But counsel cannot be allowed to read a statute backwards, where its language is not obscure, for the purpose of ascertaining what was the intent of the Legislature, what its primary and what its secondary object. The statute does not provide that " a quantity of land, not exceeding in value

five thousand dollars, including within its boundaries the dwelling house and its appurtenances, shall be exempt from forced sale." On the contrary, the language is, that " the homestead, consisting of a quantity of land, together with the dwelling house thereon and its appurtenances, not exceeding in value the sum of five thousand dollars, shall be exempt," etc. The difference between the two forms of expression is too obvious for explanation. The former makes the exemption of five thousand dollars worth of land the primary object, and the homestead merely a necessary incident. The latter makes the homestead the primary and the sole object of the exemption, with a limitation as to value. In this difference lies the vice of the appellants' argument. The incident is mistaken for the principal thing.

Such being the object of the statute, in all cases like the present, two questions only are presented : First—What is the debtor's homestead as a matter of fact ? or, in other words, how much of the land in question has he actually occupied and used as a homestead ? and, Second—What is its value ? Whatever, in fact, constitutes his homestead at the time of making the declaration and does not exceed five thousand dollars in value, must be declared exempt. Both are questions of fact, except so 'far as the first may rest on legal definition.

Both in the Constitution and in the statute the word " homestead " is used in its ordinary or popular sense—or, in other words, its legal sense is also its popular sense. It represents the dwelling house, at which the family resides, with the usual and customary appurtenances, including outbuildings of every kind necessary or convenient for family use and lands used for the purposes thereof. If situated in the country it may include a garden or farm. If situated in a city or town it may include one or more lots, or one or more blocks. In either case it is unlimited by extent merely. It need not be in a compact body ; on the contrary, it may be intersected by highways, streets or alleys. Neither is it circumscribed by fences merely. In respect to quantity by

itself considered it is unlimited, whether in town or country. In short, the only tests are use and value. The former is both abstract and statutory—the latter statutory only. Whatever is used—being either necessary or convenient—as a place of residence for the family as contradistinguished from a place of business, constitutes the homestead, subject to the statutory limit as to value. If, however, it is also used as a place of business by the family, which frequently happens, it may not therefore cease to be a homestead, if it would be necessary or convenient for family use independent of the business. If what is actually used as a homestead is of greater value than five thousand dollars the excess is not homestead, under the statute, though so in fact. In such a case the statute prescribes the course to be pursued (Sec. 3.) Further than this, in the way of general definition, it is difficult to go, if not impossible. Whatever lies beyond must find its demonstration in the peculiar facts of the case. The homestead for which the statute provides is not one in name merely, but one in fact. It must be resided upon and used as such at the time the declaration is made (Sec. 1). That this is so is plain from the declared and understood policy of the Act, independent of its mere verbiage. The Act is founded upon the idea that it is good for the general welfare that every family should have a home, a place to abide in, a castle, where it can find shelter from financial disasters and protection against the pursuit of creditors who have given credit with the full knowledge that they cannot cross its threshold. But it is not founded upon the idea that every family ought, for the sake of the general good, to be allowed to hold five thousand dollars worth of land free from the touch of honest creditors provided they reside upon and use some portion of it as a homestead.

How much of Block Eighteen was actually used by the plaintiffs as a homestead at any time prior to 1857 the Court does not find, and it does not follow that they used the entire block for that purpose merely from the fact that they resided upon a part of it, with no fence except upon its exterior

lines; for, as we have already stated, the homestead is not measured by fences merely. As fences alone cannot limit the extent of the homestead, neither can they enlarge it. Its extent is measured by use and occupation as such, and not by imaginary or artificial lines. From aught that appears from the findings, much the larger portion of the block may never have been appropriated to the purposes of a home prior to 1857. Since then, the findings show that no part of the block, except, first, the northeast corner of Lot Three, and second, the northwest corner of Lot Three, has been used as a home. In short, no act of the plaintiffs from the commencement to the end is found which shows that they have ever at any time appropriated the entire block to homestead use, except the making and recording of their declaration in March, 1862, at which date the Court finds that they were using only the parallelogram upon which they now reside. This silence on the part of the record as to how much of the block may have been actually used as a homestead at different times, is doubtless due to the idea which seems to have been entertained by counsel, that the declaration of homestead, for which the statute provides, *ex proprio vigore*, and not use, impresses upon the land the quality of homestead; but, as already suggested, the written declaration for which the statute provides does not of itself alone impress upon the land the quality of homestead. It was not intended for any such purpose, but merely for the purpose of a public record of what is in fact the homestead, and as a public declaration of the intention of the parties to secure the benefits of the statute. The premises to be described in the declaration are such and only such as the parties are residing upon and using as a homestead at the time their declaration is made. If more is included, it will not for that reason become a part of the homestead, and therefore exempt from execution, notwithstanding the whole may be less than five thousand dollars in value. If at any time prior to the making of their declaration the plaintiffs had used more than the parallelogram upon which they were then residing, the

case shows that they have also abandoned it by non-use, which, under the law as it then stood, they could do.

Judgment and order denying a new trial affirmed.

Mr. Chief Justice CURREY did not express an opinion.