## ESTATE OF MARTIN CAMETO.

### No. 5065—May 19, 1873.

HOMESTEAD UPON A LOT HELD BY CLAIMANT AS TENANT IN COMMON—RESIDENCE to comply with the act authorizing a claim of homestead in such case, (March 8, 1868, stat. 1867-8, p. 116), must be the principal use to which the premises are devoted. Living over a shop used by both the tenants in common as a place of business, is a secondary purpose.

The Homestead amendment of 1862, (statute 1862, p. 519,) abrogated the necessity of a written abandonment of homestead; and to keep a claim to a homestead alive so as to be available in this court, there must have been an actual residence *continuously* to the date of the death of decedent.

FAITHLESSNESS OF WIFE.—A wife who, prior to her husband's death, has been notoriously unfaithful to him, and is not a member of his family at his death, is not entitled to have a homestead set apart to her by the Probate Court.

Construing sections, C. C., 146, 1237; statutes 1867-8, p. 116; statutes 1862, p. 519.

*G. W. Tyler*, for widow.

*George & Loughborough*, for executor.

*Stuart S. Wright*, for son.

By the COURT: In January, 1864, Martin Cameto and one Dupuy jointly purchased the premises described in the petition, and went into possession. In March following, they commenced carrying on the blacksmithing business upon the premises as copartners, which business was continued by them thereon until the death of Cameto in 1872. Cameto and petitioner intermarried in May, 1864. Up to that time the premises had been occupied by the partners in the following manner: At the end fronting on Broadway street was a two-story building; the ground floor was occupied by them as a blacksmith shop, and they rented the upper story to a family (tenants), except one small room occupied by Dupuy, he being then a single man. Over the rear end of the lot

was a building 20 by 20, set upon frame work so as to be on a level with the second story of the front building. Between the two buildings was an open space of about fifty feet. The whole ground of the lot was used by the partners in the business, the ground floor of the front building being the blacksmith shop proper, the open space being used for various purposes, and the ground under the rear building being used as a work shop and store and lumber place in the business. Cameto occupied the rear building over the work shop and lumber place.   On one side of the front shop was a side door and stairs leading to the second story, and from this an elevated passage-way led over the open space to the rear building; this was the only outlet, and was used in common for both houses.

This was the condition of things when petitioner and Cameto married, in May, 1864.   They were married in the rear house, and immediately commenced house-keeping there, the family consisting of Cameto and wife and her father. Cameto was over forty years of age, and she under twenty. From 1868 the minor son of Cameto by a former wife was a member of the family and lived with them.   The occupation of the premises as above indicated continued until about October, 1870, except that in 1869 Dupuy married, and thence occupied the rooms over the blacksmith shop; the open passage way being changed to the other side of the lot and an addition to the front building being made.

June 11, 1864, the petitioner made, filed and recorded her declaration of homestead, which describes the entire lot by metes and bounds.

About October, 1870, Cameto and wife removed from the premises to a brick house owned by Cameto on Polk lane, where they kept house in three rooms of the upper part, renting the balance to tenants.   Her father had died meanwhile.

The partners continued the business as before on the premises on Broadway, and continued to be the owners of the property as tenants in common.

In April, 1871, the petitioner left her husband and his residence at the brick house, and took a room for herself in

another part of the city, and did not return to him, but maintained herself. Cameto continued to reside at the brick house, and died there December, 1872, testate, and Dupuy is his executor. The inventory has been returned, which includes the brick house and lot, and the undivided one-half of the lot described in the petition.

The application that the premises described in the petition be set apart to the widow as a homestead must be denied. The premises were at the time of the declaration of homestead, and have been ever since, owned by Dupuy and Cameto as tenants in common. Neither Cameto nor his wife nor both ever had such exclusive occupation of the premises or any part thereof as is contemplated by the act relating to homesteads of March 8, 1868 (Stat. 1867–8, p. 116), giving a tenant in common a right to claim a homestead to the extent of his interest. They did not have any exclusive occupation of the lot; the house occupied by them was set upon a frame, beneath which was the shop and store place of the firm, used by the firm. The business of the firm was the principal use to which the premises were put; the residence of the partners and their families thereon was secondary. I do not think that petitioner ever had any right of homestead in any portion of the premises. Even if the petitioner ever had a homestead right in these premises, I think it was abandoned.

The amendment of 1860 to the Homestead Act restricted the mode of abandonment to a written declaration; but the amendment of 1862 (Stat. 1862, p. 519) took away the restriction; and in order to keep good a declaration, the premises must, within the principle of *Gregg* v. *Bostwick* (33 Cal., 220; *Estate of Delany,* 37 Cal., 176, and *Gambetti* v. *Brock,* January, 1871,) be occupied, actually or constructively, by the family at the time of the death. In this case, the family had moved away to another house owned by deceased, and did not return to the premises in question. Worse than that, she was not, at the time of his death, a member of his family in fact.

So much as to the application to set apart the premises described in the petition.

Upon the hearing, the petitioner's counsel verbally asked the Court, that in case the petition should be denied as to the lot on Broadway street, then the Court set apart to the widow a homestead under the last clause of Sec. 1465 of the Code of Civil Procedure. This request must also be denied. The petitioner heretofore made application for family allowance, upon which a full hearing was had; and from the evidence I was satisfied that she left her husband without legal cause, and committed adultery, and that the same was not condoned. No evidence of the adulterous matters was offered on this homestead application; but as the parties now before the Court are the same, and the rights now claimed arise from the same marital relations, I cannot altogether discard the former hearing. Believing as I do, from the testimony given on the application for family allowance, that the petitioner left the home of Cameto without legal excuse, and that she afterwards lived in an adulterous manner, and that she did not, at the time of the death of deceased, reside with him, and was not entitled to be considered a member of his family, she is not entitled to a homestead out of his estate.

The homestead to be set apart under the latter clause of Sec. 1465, is to be for the use of the surviving wife and minor children. The children have a right to be considered. (See Sec. 1468.) The decedent left a minor son by a former marriage, now living. The Legislature can hardly have contemplated that a faithless wife may, after the husband's death, take her paramour back to the dead husband's house and bed, and compel the son to witness his father's dishonor or seek a home elsewhere.

The case of *Lies* v. *DeDiabler*, 12 Cal., 327, cited by petitioner, is not in point in this case. That part of the opinion (last paragraph but two) apparently applicable, is, in my opinion, overruled in effect by the cases above cited; because, if, where a declaration is made, residence at the time of death is required, of course no right can be acquired where there is no declaration, unless the applicant was, or was entitled to be, at the death of decedent, a member of his family and a resident with him.