[No. 12053.    In Bank.—December 28, 1889.]

## ELLEN M. LUBBOCK, RESPONDENT, v. WILLIAM McMANN ET AL., APPELLANTS.

HOMESTEAD—ADDITION OF SECOND DWELLING—EXECUTION.—Though a homestead cannot be taken so as to include two dwellings standing upon the same lot at the time of filing the declaration, yet if a house and the whole lot upon which it stands are adapted to use as a homestead, and are actually used as such at the time of the dedication, the subsequent erection of an additional dwelling upon the lot will not vitiate or affect the homestead as an entirety, or render any part of it subject to seizure and sale under execution, unless the second house increases the value of the homestead beyond the statutory limit, in which case a levy may be made as a basis of application for the admeasurement of the excess in value. (PATERSON, J., dissenting.)

ID.—LEVY OF EXECUTION UPON WHOLE PROPERTY.—The levy of an execution upon the whole of the property claimed as a homestead, by reason of the erection of an additional dwelling thereon, would confer no right, even if the second dwelling were separately subject to execution.

ID.—DEFEAT OF HOMESTEAD.—A homestead once duly established cannot be defeated or vitiated except by conveyance, encumbrance, or abandonment in the manner provided in sections 1242 and 1243 of the Civil Code.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco.

The facts are stated in the opinion of the court.

*A. A. Sargent*, and *Frank M. Stone*, for Appellants.

*George D. Collins*, and *Sawyer & Burnett*, for Respondent.

Fox, J.—Judgment was rendered in this case in Department One of this court September 9, 1889, affirming the orders appealed from. Reference is made to the opinion filed at that time for a statement of the case, and for the rulings then made upon the points considered, which rulings are still adhered to. The parties have since, by stipulation, waived all controversy upon the points then discussed, but an orderly and intelligible disposition of the case requires that rulings should be had upon those points, and after a careful reconsideration of the case in Bank, we see no reason to change the decision then made, so far as it goes.

Upon the express stipulation, and at the request of counsel on both sides, the case was resubmitted in Bank, for the purpose of having a direct opinion of the court upon the single question of whether or not the second house mentioned in the former opinion—the house built on the rear of the lot since the filing of the homestead declaration — was and is exempt from execution; whether it was and is impressed with the character of homestead to the extent of being exempt from execution on that account. And to avoid future litigation between the parties, it is stipulated that the orders of the court below, from which the appeal was taken, shall be affirmed or reversed, according as we shall now decide this question in the affirmative or negative.

There can be and is no question but that this entire lot was fully impressed with the character of homestead before and at the time this second house was built upon it. The building of the second house did not increase the value of the entire property, including both houses, to an amount which is in excess of that which is by law, and as incident to homestead, made exempt from execution as such. No part of the tract has ever been abandoned, or the homestead claim thereon released, in the manner provided by law. How then, if at all, is it made subject to sale on execution? The strict language of the

question submitted confines it to the *house:* is the *house* exempt? It certainly is if the land upon which it stands is exempt; for it has become a part of the realty, and can only be separated from the land with the consent of the owner. But we do not understand the intent to be to limit the question to the house alone, as distinguished from the land upon which it stands.

The constitutional provision is, that "the legislature shall protect by law from forced sale a certain portion of the homestead and other property of all heads of families." (Art. 17, sec. 1.) Here there is no limit to the value of the property thus to be protected. It is left to the legislature to determine what portion, to what limit, and by what means it shall be protected. Exemption is a constitutional right, incident to homestead (*Ham* v. *Santa Rosa Bank*, 62 Cal. 138; 45 Am. Rep. 654), but the extent of such exemption, and the means by which it shall be secured, are made by the constitution the subject of legislative enactment.

Legislating for the purpose of giving effect to this constitutional provision, it has been in the codes provided that "the homestead consists of the dwelling-house in which the claimant resides and the land on which the same is situated, selected as in this title provided." (Civ. Code, sec. 1237.) Following this, and in the same title, which extends to and including section 1269, will be found the provisions as to the mode and manner of selection in order to avail of the exemption; the limitation of such exemption; the mode and manner of abandonment or release; the exceptions to the rule of exemption; and the course to be pursued when the homestead exceeds in value the limit of the exemption.

Actual occupation as a place of residence at the time of filing the declaration is necessary in order to impress upon the premises the character of homestead. (Civ. Code, sec. 1263; *Prescott* v. *Prescott*, 45 Cal. 58; *Babcock* v. *Gibbs*, 52 Cal. 629; *Dorn* v. *Howe*, 52 Cal. 630; *Aucker* v.

*McCoy*, 56 Cal. 524.)   Use at the time of selection, and selection by the making and recording of the proper declaration, are both essential elements in the creation of the homestead character.   Neither is sufficient for that purpose without the other.   (*Laughlin* v. *Wright*, 63 Cal. 113; *Maloney* v. *Hefer*, 75 Cal. 424; *In re Allen*, 78 Cal. 294.)   If, at the time of filing the declaration for record, the two houses now standing upon this lot had been standing as they now do, and occupied as they now are, only the one occupied as the dwelling of the plaintiff, with that portion of the lot used in connection therewith, would have been impressed with the homestead character; as to the other house and the land used in connection with it, the attempt to dedicate it as a homestead would have been inoperative.   (*Tiernan* v. *His Creditors*, 62 Cal. 286; *Maloney* v. *Hefer*, 75 Cal. 424; *In re Allen*, 78 Cal. 294.)   But it has never been held, under our statute, that the subsequent erection of a second house, for whatever purpose such second house was used, operated to relieve the property *pro tanto*, or any separate part of it, of the homestead character which had already attached, so as to make it liable to seizure and sale under execution.   On the contrary, the statute expressly provides that the homestead can only be conveyed or encumbered as provided in section 1242, and only be abandoned as provided in section 1243 of the Civil Code. Also, that it is subject to execution only in the cases provided in section 1241, of which this is not one.   Even a removal from the homestead, followed by long-continued residence and the acquirement of citizenship in another state, has been held not to operate as an abandonment of a homestead.   (*Porter* v. *Chapman*, 65 Cal. 367.   See also *Tipton* v. *Martin*, 71 Cal. 325.)

The whole lot being adapted to use as a homestead, and actually used as such at the time of dedication, it then became as an entirety affected with the homestead character.   And this is so, without regard to the value of

the lot, either at the time of its dedication or at any subsequent period. There is no statutory limit as to the value of the property which may be selected and upon which the character may be impressed. When the attributes of residence and selection according to law exist so as to express its essence, the homestead becomes an *estate in the premises* selected, exempted by law from forced sale. They may be of greater or less value than the interest in them exempted by law. The excess, if there be one, in value, though it may be homestead in fact, is subject to the *jus disponendi* of the owner and the claims of his creditors. (*Ham* v. *Santa Rosa Bank*, 62 Cal. 139.) But it does not follow that the excess in value is subject to seizure and sale at the instance of an execution creditor. If the property so impressed with the character of homestead is worth more than the homestead exemption, and the creditor desires to avail himself of that excess, the proceedings provided by the code (Civ. Code, secs. 1245–1259) must be taken for the admeasurement and application of such excess. (*Waggle* v. *Worthy*, 74 Cal. 268.) A judgment creates no lien upon property thus affected, and a levy gives no right, except to inaugurate the proceedings for the admeasurement of such excess. (*Barrett* v. *Simms*, 62 Cal. 440.) It follows that a sale, unless made under order of court, and for purposes of segregation of the excess as provided in the sections referred to, would convey no title. But though the sale of a homestead under execution conveys no title, it may create a cloud and involve the homestead claimant in litigation, and will therefore be enjoined. (*Culver* v. *Rogers*, 28 Cal. 520, *Eby* v. *Foster*, 61 Cal. 287.)

So far as we have been able to discover, no case has before arisen under our statutes where the precise question now submitted has been presented. In every case where it has been held that a second tenement used for purposes other than the residence of the family has

operated to prevent the homestead character from attaching to such second tenement and the land used in connection therewith, such second tenement existed at the time of the attempted homestead selection, and was not one constructed after the homestead character had attached to the land. Here the homestead character had attached before the second building was constructed, and reasoning from the analogy of the statutes and of the cases cited, the construction of such building was not an act which relieved it of such homestead character, and rendered the land subject to direct seizure and sale under execution.

If the construction of this second building had increased the value of the tract claimed as a homestead to an amount in excess of the homestead exemption, or if for any other cause it had become or was of greater value than the amount of such exemption, the plaintiff would have been entitled to make the levy, as he has done in this case, not for the purpose of proceeding to sale under the execution, but as a basis of application to the proper court for proceedings under the statute for the admeasurement of such excess in value, and then for partition or sale, under the order of the court, as in the statute provided. But no provision for such a proceeding has been made, unless there is such an excess in value. And while it is true that, under the rule of law heretofore established, this second house, with the land upon which it stands, would not have taken on the homestead character if it had been there at the time of homestead selection, but that the homestead would then, by reason thereof, have been so limited in extent as to exclude this house and its grounds, it may very well be that the legislature did not intend that the homestead should thereafter be limited in extent by reason of future improvements, even if such improvements were used for purposes of revenue rather than residence, so long as they did not increase the value beyond the limit

of exemption. Whether this be so or not, we are compelled to hold that, under the facts of this case, the statutes, and the authorities cited, this whole lot is so affected with the homestead character as to be exempt from sale under execution, and there is no authority in this proceeding, or in the case in which the execution was issued, to segregate any part of the lot and relieve it from such exemption. Whether there is such authority anywhere, we are not now called upon to decide; but without further legislative action, it would seem to be exceedingly doubtful.

The judgment and order appealed from must be affirmed, and it is so ordered.

Works, J., Sharpstein, J., Thornton, J., McFarland, J., and Beatty, C. J., concurred.

Paterson, J., dissenting. — I am unable to concur in the prevailing opinion, or in the judgment. It is immaterial, in my opinion, whether the second house was placed on the land before or after the filing of the declaration of homestead. The stipulation of counsel reduces the question before us to the simple inquiry whether or not the house built on the rear of the lot is exempt from execution. The question is purely one of exemption. The question is not whether the whole property, including both houses, is so impressed with the homestead character that it would go to the survivor on the death of one of the spouses. Property selected and improved as a homestead may retain its homestead character for certain purposes, and yet a portion of it be not exempt from execution. This is plain from the provisions of the constitution and the statute bearing upon the subject. The constitution provides that "the legislature shall protect by law from forced sale *a certain portion of the homestead,* and other property of all heads of families." (Art. 17, sec. 1.) Acting upon this provision the legislature has provided that "the homestead

consists of the dwelling-house *in which the claimant resides, and the land on which the same is situated.*" (Civ. Code, sec. 1237.) Section 1240 of the Civil Code provides that "the homestead is exempt from execution or forced sale, except as in this title provided." This court has decided that the homestead represents *the dwelling-house in which the family resides, with the usual and customary appurtenances, including out-buildings necessary for family use;* that the only tests are use and the value (*Gregg* v. *Bostwick,* 33 Cal. 228; 91 Am. Dec. 637); that the use of the property is an important element to be considered. (*Laughlin* v. *Wright,* 63 Cal. 116.) Referring to *Gregg* v. *Bostwick, supra,* Thompson on Homesteads and Exemptions says: "This last case very clearly conducts us to the rule that houses built for the purpose of being rented to tenants, thus yielding to the debtor a revenue separate from any use immediately connected with his dwelling, form no part of his homestead." (Sec. 130.) It has been held uniformly that in order to be exempt from execution the property claimed as a homestead must be actually occupied as a residence by the family of the owner,—temporary absences excepted, of course,—and that any portion of his real estate not so used is not exempt from execution, whatever may be its extent or value; and that where houses and lots are rented for money rent to tenants who are not servants or employees of the owner, the latter cannot claim them as a part of his own home and residence, although they may adjoin the same. (*Ashton* v. *Ingall,* 20 Kan. 670; *Austin* v. *Stanley,* 46 N. H. 51; *Kurz* v. *Brusch,* 13 Iowa, 371; 81 Am. Dec. 435; *Casselman* v. *Packard,* 16 Wis. 114; 82 Am. Dec. 710.) As all other questions are waived by the stipulation of counsel, I think that the rear house and the land upon which it stands should be subjected to the satisfaction of the judgment.

Rehearing denied.

The following is the opinion of Department One above referred to: —

Fox, J. — In 1872 plaintiff and her husband were residing upon a certain lot of land in the city and county of San Francisco, having twenty-five feet front, and extending back eighty feet to an alley. The lot, with the small dwelling-house on the front thereof, was the community property of plaintiff and her said husband. On the 2d of December of that year she recorded the same as a homestead. The regularity of this dedication and recording of the homestead is conceded. At some period after the property had been so dedicated and recorded as a homestead, the Lubbocks built another small house on the rear of the lot, wholly disconnected from the one in which they lived, and fronting on the alley, which they rented out. Afterward, one Sobey recovered a judgment in a justice's court against the husband of plaintiff, upon which he took out execution and placed it in the hands of defendant McMann, then sheriff, who, under the direction of the judgment creditor, levied upon the whole of the lot so recorded as a homestead, and advertised the same for sale. Plaintiff, after notifying the sheriff of the homestead character of the property, and demanding a release from said levy, filed her complaint in this action, setting up the material facts hereinbefore recited, showing the homestead character of the property, alleging that at the time of recording the said homestead claim the property was not, and is not now, of a greater value than five thousand dollars, and praying for an injunction to restrain the defendant from making such sale. An order was issued to show cause why an injunction should not be granted as prayed, and restraining the sale in the mean time. Upon the return day of the order to show cause, the case was heard upon the complaint of plaintiff, the answer of defendants admitting all the material allegations of the complaint, and setting up

in addition the fact of the erection of the second tenement above referred to after the recording of the homestead, and the fact that the same was not occupied by the homestead claimants as a place of residence, but was rented out, they residing in the original dwelling-house on the lot; and on demurrer to said answer, that the same did not state facts sufficient to constitute a ground of defense to said action. While the record does not disclose the fact, it is conceded by counsel here that at the hearing it was understood that judgment final should follow the result of the submission of the case on those pleadings and demurrer.

The court sustained the demurrer, and judgment went for plaintiff perpetually enjoining the sale. From this judgment the appeal is taken.

Appellants criticise the action of the court below in issuing the restraining order pending the hearing of the order to show cause, without requiring plaintiff to file a bond thereon, but expressly admit that in view of the final result no injury resulted to them, and seem to waive any adjudication here as to the regularity of that proceeding.

We perceive no error in the order of the court sustaining the demurrer to the answer, and defendants declining to amend, the judgment followed as a necessary sequence; no question being raised as to the remedy, the plaintiff was thereupon entitled to her perpetual injunction. No bond is required upon granting such relief.

It is admitted that the homestead was regularly created. There is no pretense that it had ever been abandoned, or even that it had been enhanced in value beyond the homestead exemption. The claim is simply that it became "*vitiated*" *quoad* the rear of the lot, upon which the new tenement had been erected. But there is no provision of the statute defining by what means or under what circumstances a homestead may become " vitiated," nor is any particular part of the homestead tract levied upon

as being the part relieved from the homestead lien by this new process of vitiation. The levy is upon the whole tract, an unknown part of which, it is admitted, is still subject to a valid homestead claim.

Judgment and orders appealed from affirmed.

WORKS, J., concurred.

PATERSON, J., concurring.—I concur in the judgment. The execution was levied upon the whole of the property, including the homestead, which is exempt from execution or forced sale. The remedy of the execution creditor is against that portion of the premises included within the homestead declaration which has ceased to be part of the homestead. It may be a difficult question to determine how the property which does not belong to the homestead should be described, but the fact that such a difficulty exists does not excuse a levy upon the homestead itself. If there are any natural or artificial boundaries between the dwelling-house of the homestead claimant and that of his tenants, it will be easy to make a proper description of the property subject to sale, or it might be described as that portion of the premises described in the declaration not actually used by the family as a homestead.

It is claimed by respondent that inasmuch as the dwelling-house now occupied by the tenant was placed upon the land subsequent to the filing of the declaration of the homestead, and because the entire property is now under the value of five thousand dollars, no portion of the premises described in the declaration of homestead is subject to execution or forced sale. There is no merit in this contention. The constitution provides that "the legislature shall protect by law from forced sale a certain portion of the homestead, and other property of all heads of families." (Art. 17, sec. 1.) Acting upon this provision, the legislature has provided that "the homestead

consists of the dwelling-house *in which the claimant resides, and the land on which the same is situated."* (Civ. Code, sec. 1237.) "The homestead is exempt from execution or forced sale, except as in this title provided." (Civ. Code, sec. 1240.) The question before us is not one of abandonment or vitiation of the homestead in its entirety, but a question of exemption. What property is exempt from execution or forced sale? "It [the homestead] represents the dwelling-house in which the family resides, with the usual and customary appurtenances, including out-buildings of every kind necessary or convenient for family use, and lands used for the purposes thereof. . . . . The only tests are use and value. The former is both abstract and statutory; the latter statutory alone." (*Gregg* v. *Bostwick*, 33 Cal. 228; 91 Am. Dec. 637.) "The mere filing of a declaration of homestead does not of itself constitute the premises embraced within it the homestead of the declarant. The *use* of the property is an important element to be considered." (*Laughlin* v. *Wright*, 63 Cal. 116.)

Referring to *Gregg* v. *Bostwick, supra,* Mr. Thompson, in his work on Homesteads and Exemptions, says: "This last case very clearly conducts us to the rule that houses built for the purpose of being rented to tenants, thus yielding to the debtor a revenue separate from any use immediately connected with his dwelling, form no part of his homestead." (Sec. 130.) In *Ashton* v. *Ingall* it was held that in order to be exempt, the property claimed as a homestead must be "occupied as a residence by the family of the owner. . . . . Any portion of his real estate not so used and so occupied will not be exempt, whatever may be the extent or value of such real estate, great or small. . . . . Where houses and lots are rented for a money rent to tenants who are not servants or employees of the owner, with the intention that such houses and lots shall become the homes and residences of such tenants and their families, and they actually do become the

homes and residences of such tenants and their families, the owner certainly cannot then claim that such houses and lots are a part of his own home and residence, although they may adjoin the same." (*Ashton* v. *Ingall*, 20 Kan. 670. See also *Austin* v. *Stanley*, 46 N. H. 51; *Kurz* v. *Brusch*, 13 Iowa, 371; 81 Am. Dec. 435; *Casselman* v. *Packard*, 16 Wis. 114; 82 Am. Dec. 710.)