[Civ. No. 24014. Second Dist., Div. One. Nov. 23, 1959.]

ANNA M. RAY, Appellant, v. HENRY VALDEZ et al., Respondents.

W. E. Kalbfleisch for Appellant.

James A. Watkins for Respondents.

WOOD, P. J.—Plaintiff, a judgment creditor of defendants, sought a judgment that a declaration of homestead, made by defendants, is void. Judgment was in favor of defendants. Plaintiff appeals from the judgment and the order denying her motion for a new trial.

Defendants, husband and wife, were the owners of 6.39 acres of land, and shack housing thereon, located in Torrance. On October 13, 1950, they recorded a declaration of homestead which stated that the property they claimed as a home-

stead was the 6.39 acres (described by metes and bounds), and that the character of the property to be homesteaded was "Ten rooms of shack housing and a frame shed, occupied by" defendants and their four minor children.

After recording the declaration, and prior to October 30, 1954, the defendants at various times sold portions of the 6.39 acres to third persons, but they did not sell the "lot" upon which the "Ten rooms of shack housing and a frame shed" were situated. The "lot," so referred to, is described in the findings by metes and bounds. (From a consideration of the dimensions of the lot, as shown in that description, it is estimated by this court that the area of the lot is about one-fifth of an acre.) In other words, it appears that defendants sold all of the 6.39 acres except a portion thereof which comprised about one-fifth of an acre, and on which portion the shack housing and shed were situated.

On October 30, 1954, defendants moved a "freeway house" onto the lot, and placed that house beside the shack housing, and made the house "fit and ready for habitation."

About November 5, 1954, the plaintiff lent $10,000 to defendants, and at that time defendants executed a promissory note for that amount, payable to plaintiff two years after date.

About December 1, 1954, the defendants and their children moved from the shack housing and shed into the freeway house, and thereafter they resided in that house. After moving into that house, the defendants caused the shack housing and shed to be torn down, and caused the materials therefrom to be disposed of at a public trash dump.

Defendants failed to pay the note, and on December 26, 1956, the plaintiff obtained a default judgment, upon the note, against defendants for $12,053.79. On March 29, 1957, plaintiff caused an execution to be levied on the freeway house and the lot upon which that house was situated. Defendants informed the sheriff that on October 13, 1950, they had recorded said declaration of homestead. The sheriff refused to sell the property.

On July 23, 1957, the present action was commenced. Plaintiff sought a judgment herein that the declaration of homestead was "void as of March 29, 1957." The court found, among other things, that the declaration of homestead was valid when recorded "at which time defendants' property was impressed with the homestead character and was thereby afforded protection from execution." As above stated, judgment was in favor of defendants.

Appellant contends that the sale by defendants of part of the land described in the declaration of homestead nullified the declaration.

Section 1243 of the Civil Code provides: "A homestead can be abandoned only by a declaration of abandonment, or a grant thereof . . ."

Appellant cites *First Trust & Savings Bank* v. *Warden,* 18 Cal.App.2d 131 [63 P.2d 329], wherein it is said, at page 134: "[I]t has long been the rule in this state that the homestead is destroyed whenever the title to all or a portion of the homestead property is transferred to a third party." Appellant also cites *Vieth* v. *Klett,* 88 Cal.App.2d 23, 26 [198 P.2d 314], in which appears the above statement from the First Trust and Savings Bank case. It is to be noted that in the first cited case the owners of the homestead property conveyed all their interest in the property to a third person. It is to be noted also that in the second cited case the court held that a conveyance of all the homestead property for the purpose of having it immediately retransferred to create a joint tenancy was not a conveyance with intent to abandon the homestead. It thus appears that those two cases are factually distinguishable from the present case. Each of the two cited cases pertained to a conveyance of the whole property; whereas, the present case pertains to conveyances at various times of property whereby eventually all the property was conveyed except the part referred to as the lot where the shack housing was located. Since those cited cases did not involve conveyances of specific parts of the homestead property, it appears that the statement therein that the homestead is destroyed when "a portion of the homestead property is transferred to a third party" was not necessary for a decision therein. In the case of *Kellersberger* v. *Kopp,* 6 Cal. 563, which was cited in the First Trust and Savings Bank case as authority for the above-quoted statement (about destroying a homestead) it was said, at page 565: "As husband and wife may, by joining in a conveyance, destroy a homestead right already acquired, by selling the whole, so they may equally destroy it by selling and conveying a part of it, *if it be done in the shape of an undivided moiety,* so as to turn the estate into a tenancy in common. . . ." (Italics added.) In other words, the case which was cited as authority for said statement, that transferring a part of the homestead destroyed the homestead, also included the condition or additional provision: ". . . if it [conveyance of a part] be done in the shape of an

undivided moiety, so as to turn the estate into a tenancy in common.'' In the present case the conveyance of parts of the homestead property were not conveyances of undivided interests in the whole homestead property, but the conveyances were absolute grants of specific or divided parts of the property. In the present case the result of the various conveyances of parts of the property was that no interest in the lot (that is, the part of the homestead property upon which the defendants resided) was conveyed. The sales or conveyances of the various parts of the homestead property did not constitute an abandonment of the homestead as to the remaining unconveyed part of the property on which the shack housing or dwelling house was located.

 Appellant also contends that the act of defendants in moving the freeway house onto the property, and making a dwelling of it, was an abandonment of the homestead. In *Lubbock* v. *McMann*, 82 Cal. 226 [22 P.2d 1145, 16 Am.St.Rep. 108], a ''second'' house was built on the rear of the homestead property after the declaration was filed. The question therein was whether the second house and the land upon which it stood were impressed with the character of homestead to the extent of being exempt from execution. In that case it was said (p. 228) that the second house became a part of the realty. It was also said therein (p. 231) : ''Here the homestead character had attached before the second building was constructed, and . . . the construction of such building was not an act which relieved it (land) of such homestead character, and rendered the land subject to direct seizure and sale under execution.'' It was also said therein (p. 229) : ''But it has never been held under our statute, that the subsequent erection of a second house, for whatever purpose such second house was used, operated to relieve the property *pro tanto*, or any separate part of it, of the homestead character which had already attached, so as to make it liable to seizure and sale under execution.'' In the present case the act of placing the second house thereon was not an abandonment of the homestead.

 Appellant also contends that the destruction of the shack housing and shed was an abandonment of the homestead. The freeway house was placed on the lot beside the shack housing and shed. After the freeway house had been made suitable as a dwelling house, the defendants and their children moved into it and have resided there since that time. After moving into the house, the defendants caused the shack

housing and shed to be torn down, and caused the materials therefrom to be disposed of as trash. Apparently the shack housing and shed had served their period of usefulness as a dwelling place. In lieu of the shack housing and shed, the freeway house became the dwelling place of defendants and their children, and they have continued to live there. It was a part of the homestead property. In the *Lubbock* v. *McMann* case, *supra*, it was said at page 231: "If the construction of this second building had increased the value of the tract claimed as a homestead to an amount in excess of the homestead exemption, or if for any other cause it had become or was of greater value than the amount of such exemption, the plaintiff would have been entitled to make the levy, as he has done in this case, not for the purpose of proceeding to sale under the execution, but as a basis of application to the proper court for proceedings under the statute for admeasurement of such excess in value, and then for partition or sale, under the order of the court, as in the statute provided." The destruction of the shack housing and shed was not an abandonment of the homestead.

Appellant asserts further that the court erred in denying her motion for a new trial. One of the alleged grounds for a new trial was newly discovered evidence. Such new evidence was that on April 4, 1957, defendants recorded a document purporting to be a second declaration of homestead upon the lot (and new house thereon). Appellant asserts that she obtained a preliminary title search on February 1, 1957, but the search was obtained by her prior to the filing of this action on July 23, 1957; that she discovered the second declaration after February 28, 1958 (the date of the trial); and that with reasonable diligence she could not have discovered and produced such new evidence at the trial. She argues to the effect that since defendants' counsel knew that the second declaration had been filed, he should have set forth in the answer, as an affirmative defense, that the second declaration had been filed; and that if such defense had been made, the whole issue as to a homestead on the property could have been decided in this action. A copy of the alleged second declaration is attached to the notice of motion for a new trial. That declaration shows that the defendants acknowledged the execution of it. (It was not verified.) It did not state that a former declaration had been made, or that if one had been made it had been abandoned. It stated that the estimated value of the premises was $18,000. Defendants state in their

brief (p. 10) that the filing of successive declarations of homestead is not a method by which a homestead may be abandoned; and that the second declaration was a nullity and it did not detract from the effect of the first declaration. Even if the second declaration were new evidence which could not have been discovered in the exercise of due diligence, it does not appear reasonably probable that such evidence would produce a different result on a new trial. The trial court did not err in denying the motion for a new trial.

An order denying a motion for a new trial is not appealable, but such order may be reviewed on appeal from the judgment.

The attempted appeal from the order denying the motion for a new trial is dismissed. The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 20, 1960.