[No. 8456.   Department Two. — March 30, 1886.]

E. E. SKINNER, RESPONDENT, v. J. R. HALL ET AL., APPELLANTS.

HOMESTEAD — ACTUAL RESIDENCE OF CLAIMANT — DURATION OF — RESIDENCE OF FAMILY. — A declaration of homestead may be made on real property upon which the claimant has actually resided only one day, although the family of the claimant reside elsewhere, and the property is partly rented to others or used for purposes other than a residence.

ID. — EXTENT OF HOMESTEAD — EVIDENCE. — On a review of the evidence, the decision of the court below sustained as to the extent of the homestead.

APPEAL from a judgment of the Superior Court of Santa Clara County.

The facts are stated in the opinion.

*William B. Hardy*, and *James R. Lowe*, for Appellants.

*J. C. Black*, for Respondent.

Belcher, C. C.—This action was commenced to re-strain the sale of a lot of land in the city of San José, under executions issued upon judgments against the plaintiff. . The plaintiff claimed that when the executions were levied the lot was his homestead, and therefore not subject to forced sale.

The defendants denied that it was a homestead, and whether it was or not is the only question presented for decision.

The court found that on the fifteenth day of October, 1879, the plaintiff resided with his family, consisting of his wife and one child, in a dwelling-house on the lot, and on that day made and caused to be recorded a dec-laration, in proper form, claiming it as a homestead.

On the 6th of December following his house was par-tially burned, and more than half of his furniture was destroyed.

Immediately after the fire, he went with his wife and child to the house of his mother, on the adjoining lot, where it was agreed that he should pay for his board, and his wife should assist in the housework as a com-pensation for her board and that of the child. He pro-ceeded to repair his house, and the repairs were completed in the month of May, 1880. After making the repairs he had not the means to refunish the house, and that he might raise money to purchase the necessary furniture, he rented the house and lot by the month, for the monthly rental of fifteen dollars. The tenant entered into possession, and continued to occupy the premises until May, 1881.

When he filed his declaration of homestead in October, 1879, he owned the undivided half of the lot, and of the adjoining lot where his mother lived, and she owned the other undivided half of the two lots.

Between the month of May, 1880, and the 24th of January, 1881, he exchanged conveyances with his mother, and thereby acquired the title to the whole of the lot on which his house stood.

On the last-named day he made an arrangement with his tenant, by which he gave up a part of the rent and was permitted to occupy the front room of the house; and on the night of that day he took to the room some bedding and slept there. He continued to sleep in the room until May, when the tenant gave up the house, and his wife and child joined him and occupied the same room with him after the 15th of February.

On the 25th of January, 1881, he and his wife executed an abandonment of their homestead on the lot, and thereafter, on the same day, he executed a new declaration of homestead thereon. Both papers were then filed for record in the recorder's office—the abandonment at ten minutes, and the new declaration at fifteen minutes, after ten o'clock, A. M.

The abandonment was not made with any intention on the part of the plaintiff or his wife of abandoning the premises as their home and residence, but for the purpose of facilitating, as he believed, the division of the property held in common by him and his mother, and with the intent to immediately refile another declaration of homestead thereon. The lot had a frontage of 62 feet and a depth of 137½ feet. A board fence extended back from the front through the middle of the lot a distance of 95 feet, and all back of that was inclosed in a poultry-yard.

The dwelling-house and out-buildings were on the north thirty-one feet front, and no improvements, except the fence surrounding it and the cross-fence of the poultry-yard, were on the south half of the lot. The value of the premises did not exceed the sum of three thousand dollars.

Upon these facts the defendants contended that there

was no homestead, because the old homestead was abandoned, and the plaintiff was not residing on the premises when he filed his new declaration of homestead. The court, however, thought otherwise, and rendered judgment for the plaintiff.

The appeal is from the judgment, and rests upon the judgment roll.

A homestead consists of the dwelling-house in which the claimant resides, and the land on which the same is situated, selected as provided in the Civil Code. (Civil Code, sec. 1237.)

The declaration of homestead must contain, among other things, a statement that the person making it is residing on the premises, and claims them as a homestead. (Civil Code, sec. 1263.)

To constitute a valid homestead, the claimant must *actually* reside on the premises when his declaration is filed. (*Aucker* v. *McCoy*, 56 Cal. 524.)

Was the plaintiff actually residing on the premises in question when his declaration was filed? After carefully considering the findings we are unable to say that he was not.

Conceding, as claimed for the appellants, that he went back to the house for the purpose of qualifying himself to file a new declaration, still it does not follow that his residence was not *actual*. He had taken up his abode in the house, and had slept there one night. His wife and child did not go with him, but it was not absolutely necessary that they should. One may have an actual residence in a house, though his family be away and he take his meals elsewhere. Nor is the fact that he had slept there but one night decisive of the question. After making an actual residence upon property, one may file a homestead upon it at the end of a day, as well as at the end of a month or a year. So one may file and maintain a homestead upon property which is partially rented out or used for other purposes than his resi-

dence. (*Ackley* v. *Chamberlain,* 16 Cal. 181; *Phelps* v. *Rooney,* 9 Wis. 70.)

It is also claimed for the appellants, that the south half of the lot, back as far as the poultry-yard fence, was not impressed with the character of homestead, and to that extent, at least, the court erred in its conclusions. As has been seen, the whole lot was but sixty-two feet wide, and was all inclosed. It was divided by a fence running back to the poultry-yard, and the house and out-buildings were upon the northern half. Still, the court thought it all constituted the homestead and was exempt from forced sale; and we cannot say its conclusions were not justified by the facts.

On the whole, we think the judgment should be affirmed.

SEARLS, C., and FOOTE, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment is affirmed.

Hearing in Bank denied.