## In re ALLEN.[*]

### No. 12,237; January 25, 1888.

#### 16 Pac. 319.

**Homestead—Property Used in Connection With Dwelling.**— Where the family of an insolvent consisted of eleven persons, and his house on one lot contained three bedrooms, and on another lot was his well, cow-house, and other out-buildings, and also a building containing a wagon-shop, rented out by the insolvent, and a blacksmith-shop used by him, and in the unfinished upper part of the building some of his family slept, and which, when able, he intended to finish to use with his house, both lots were properly set off as a homestead.

APPEAL from Superior Court, Butte County; Leon D. Freer, Judge.

Albert Allen, an insolvent, made his application under the insolvent law for a homestead. The court ordered the property claimed set apart as a homestead, from which order the assignee appealed.

F. C. Lusk for appellant; Park Henshaw for respondent.

HAYNE, C.—Appeal from a judgment setting aside a homestead under the insolvent law. The homestead set apart consisted of lots 4 and 5, in block 39, of the town of Chico. These two lots adjoined each other. Upon lot 5 was the dwelling-house, and upon lot 4 were certain out-buildings and a blacksmith-shop. The two lots and buildings were together under the value of five thousand dollars. It is conceded that the order was proper as to lot 5, but it is argued that lot 4 was used exclusively for business purposes, and that, therefore, there could not be an actual residence upon it. It appears, however, that a part, at least, of lot 4 was used for family purposes. The court finds that "the well, cow-house, chicken-house, wood-shed, and other out-buildings necessary and convenient for the use of said premises, are situate upon lot 4." This we think is not contradictory of the other find-

---

*For subsequent opinion in bank, see 78 Cal. 293, 20 Pac. 672.

ings, when all are taken together. It appears from the evidence that the cow-shed was built in 1884–85. "Before it was built there was a wood-house there. The barn now is used for the same purpose that the old one was; wood-house, chicken-house, and cow-shed combined."

The homestead is not restricted to the ground actually covered by the dwelling-house. It includes the additional ground which is necessary or convenient for family use. In this regard Sanderson, J., delivering the opinion in Gregg v. Bostwick, 33 Cal. 227, 91 Am. Dec. 637, said: "It represents the dwelling-house at which the family resides, with the usual and customary appurtenances, including out-buildings of every kind necessary or convenient for family use, and lands used for the purposes thereof. If situated in the country it may include a garden or farm. If situated in town it may include one or more lots or one or more blocks. In either case it is unlimited by extent merely." The rule laid down in this case has been frequently approved and followed. And in pursuance of it the court held, in Englebrecht v. Shade, 47 Cal. 627, that the use of an adjoining lot "for the purpose of drying clothes, and as a means of access to the street," was sufficient to support a declaration of homestead including it. So, in Skinner v. Hall, 69 Cal. 195, 10 Pac. 406, it was held that a portion of a lot used as a chicken-yard was properly included in the homestead. The above-mentioned portion of lot 4 certainly comes within the rule of these cases. It must be presumed that the legislature intended that the family should have water to drink, and wood to cook with. And inasmuch as a cow and a certain number of chickens are exempt from execution, it is reasonable to suppose that it was the intention that there should be a place to keep them. A portion of lot 4, therefore, was clearly properly treated as part of the homestead. As to the remainder of this lot there is more doubt. The facts concerning it are as follows: On one end of the lot is a two-story frame building eighty by forty feet, which is equal to about half of the area of the lot. The lower part of this building is divided into two portions. The front portion was used by the insolvent as a blacksmith-shop. The rear portion was occupied by one Canfield as a wagon-shop. The insolvent and Canfield seem to have been in some way interested together in these undertakings, for the court

finds that "the wagon and blacksmith business was carried on in conjunction by Allen and Canfield." The portion of lot 4 not covered by buildings was used for the purpose of storing wagons, setting tires, and other work connected with the blacksmith and wagon shop. The business does not appear to have been conducted on a large scale.

The family of the insolvent was a large one. According to the evidence it consisted of eleven persons, "counting my wife and myself and a small girl we have to stay with us." In the house on lot 5 there were only three bedrooms. The court finds that "the small dwelling-house situate upon lot 5 is not sufficient for the needs of the family of said Allen," and that "said Allen intended, when said shop was built, to occupy the upper part or story in connection with the small house on lot 5 as his dwelling, and has, so far as his means permitted, prepared, used, and occupied it as such, and . . . . that it is necessary for the use of his family." The court further finds that the insolvent "has been unable to complete the upper story as intended, for want of means to do so," and that "said building has never been finished off on the inside, either by boarding, ceiling, lathing, plastering, or otherwise"; but that "said upper story of the shop has been, since its erection, used as a sleeping-room for members of Allen's family." One of the rooms in the upper floor was rented out as a paint shop. Another was occupied jointly by one Nigro (who was one of the painters) and one Hall, which latter worked for the insolvent, but received no regular salary, and "boarded at said debtor's dwelling-house, and was considered one of the petitioner's family." At one time another painter lived in the upper floor with his family. Some of the insolvent's sons were in the habit of sleeping in the upper floor wherever they could find a place for their mattresses. Upon the whole evidence we cannot say that it was insufficient to support the finding that "said upper story of the shop has been, since its erection, used as a sleeping-room for members of Allen's family."

Taking this as established, it does not seem to us that the appellate court can say that there was no actual residence upon this part of the property within the meaning of the homestead law. When property is used both as a residence and for business purposes, the question of homestead is always

a difficult one. The mere fact that it is partially used for business purposes is not of itself sufficient to defeat the homestead. This is recognized in Gregg v. Bostwick, cited for the appellant, for the court there says: "If, however, it is used as a place of business by the family, which frequently happens, it may not therefore cease to be a homestead, if it would be necessary or convenient for family use, independent of the business": 33 Cal. 228, 91 Am. Dec. 637. So the mere fact that a portion of the property is rented out is not of itself sufficient to defeat the homestead: Skinner v. Hall, supra; Ackley v. Chamberlain, 16 Cal. 181, 76 Am. Dec. 516. Each case must depend in great measure upon its own circumstances. But where the property is necessary and convenient for family use, and is put to such use, we think the homestead should be sustained, unless business is the primary and principal purpose of the property, and the family use merely incidental. Upon the whole, although the case is a close one, we are not convinced that the judgment of the court below was erroneous. Some of the rulings on the admissibility of evidence do not seem quite correct, but we do not think that injury could have resulted.

We therefore advise that the judgment and order be affirmed.

We concur: Belcher, C. C.; Foote, C.

By the COURT.—For the reasons given in the foregoing opinion the judgment and order are affirmed.