[Civ. No. 642.    Third Appellate District.—November 12, 1909.]

## ELLEN HOHN, Respondent, v. N. O. PAULY et al., Appellants.

HOMESTEAD NOT LIMITED TO "HEADS OF FAMILIES"—CONSTRUCTION OF CONSTITUTION—POWER OF LEGISLATURE.—The provision in section 1 of article XVII of the constitution that "The legislature shall protect by law, from forced sale, a certain portion of the homestead and other property of all heads of families," is not restrictive upon the general power of the legislature to give homesteads to heads of families only; but the legislature representing the law-making power of the people may extend the homestead privileges to other persons than heads of families. The extent of the right, and the mode of its protection, with the limitation of the rights of creditors therein, are purely matters of legislative prescription, which the courts can only construe and apply.

ID.—HOMESTEAD DECLARED BY WIDOW—VALIDITY.—A homestead declared by a widow, who resides upon her own premises claimed as a homestead, the value of which does not exceed $1,000, the declaration of which is in the form required by the statute, is valid and will be protected in equity.

ID.—ACTION TO ENJOIN FORCED SALE—PLEADINGS AND PROOF—NONSUIT PROPERLY DENIED.—In an action by the widow to enjoin a sale of her homestead under execution by a creditor, where the averments of the complaint that she was the owner of the premises and residing thereon when the homestead was declared were admitted, and the declaration pleaded and proved was in proper form, the court properly denied a motion for a nonsuit.

ID.—USE OF HOME FOR HOTEL PURPOSES—MERE INCIDENT.—The fact that the plaintiff used her home, not exceeding $1,000 in value, for

the purpose of making a precarious living therefrom by using the same for hotel purposes for the accommodation of boarders and guests, will not defeat her homestead claim thereto, it appearing that it would be reasonable under the circumstances to conclude that the business, rather than the home, was the mere incident.

ID.—PRESUMPTION OF GOOD FAITH IN DECLARATION OF HOMESTEAD.— Where there is no evidence to show the contrary, it must be presumed that the declaration of homestead was made in the utmost good faith.

ID.—ORIGINAL PURPOSE OF PUBLIC USE OF HOME.—Even if it was the original purpose of the house used as a home to prepare the same for the accommodation of boarders and guests, such purpose would not, under the authorities in this state, preclude the claiming of the residence of the owner as a homestead.

ID.—PLEA OF SUBSEQUENT NONRESIDENCE IMMATERIAL—MODE OF ABAN-DONING HOMESTEAD.—A plea in the answer that the plaintiff had ceased to reside on the premises claimed as a homestead is immaterial. The homestead, once lawfully declared, can be abandoned only in the manner pointed out in section 1248 of the Civil Code, by a declaration of abandonment, or by a grant thereof.

ID.—JUDGMENT LIEN OR EXECUTION LEVY ON HOMESTEAD INEFFECTIVE.— No judgment lien obtained by a creditor of the homestead claimant nor levy of an execution upon the homestead property can bind the homestead claim where there is no contention that the judgment is within the provisions of section 1241 of the Civil Code. The attempted levy of an execution upon property which is exempt from forced sale must be futile to affect any interest of the homestead claimant.

ID.—SUBSEQUENT TRANSFER OF INTEREST PENDING SUIT—VOID PRO-CEEDING NOT VITALIZED.—The subsequent transfer of the plaintiff's interest pending her suit to enjoin a sale, made one year after the void and nugatory proceeding of the creditors to obtain a lien upon the homestead and to subject it to seizure and sale, cannot have the effect to vitalize such a proceeding without authority of law, and is entirely inconsequential.

ID.—PROPER CONTINUANCE OF ACTION IN NAME OF PLAINTIFF—ABSENCE OF OBJECTION—RECOVERY OF PLAINTIFF NOT PREJUDICIAL.—Where the court truly found that, after the transfer of the interest of the plaintiff pending suit, the action was continued in the name of the plaintiff without objection, or request by defendants for a substitution, and such continuance was permitted under section 385 of the Code of Civil Procedure, defendants are not prejudiced because a righteous judgment was obtained in the name of the plaintiff, rather than that of her successor in interest.

ID.—EVIDENCE OF ADMITTED OWNERSHIP NOT PREJUDICIAL.—Evidence of a patent from the United States to the husband of the widow

in proof of her admitted ownership would not have prejudiced the defendants.

Id.—Trial—Reopening Case for Further Evidence—Discretion.— *Held,* that the court does not appear to have abused its discretion in reopening the case for further evidence, after submission and prior to its decision. It must be assumed that it was in further-ance of a desire of the trial judge to reach a just conclusion upon the merits.

Id.—Judicial Notice of Manner of Using Homes in Mountain Coun-ties—Error Without Prejudice.—The erroneous declaration of the trial court that judicial notice can be taken of the manner of constructing homes in mountain counties, so as to entertain guests and travelers, was error without prejudice to the appellants, in view of the proper conclusion reached in this particular case from the evidence before the court.

APPEAL from a judgment of the Superior Court of Plumas County, and from an order denying a new trial. J. E. Raker, Judge presiding.

The facts are stated in the opinion of the court.

L. N. Peter, for Appellants.

U. S. Webb, for Respondent.

BURNETT, J.—The plaintiff is a widow without children. At one time she was the wife of one Andrew Hersom, and after his death she married John Hohn, who died in 1898. Upon the property in controversy she filed two declarations of homestead, the first dated and recorded May 13, 1899, and the second September 23, 1901. The second differs from the first only by reason of the additional recital "that I am now unmarried and have no children and that I am a person other than the head of a family," although the sufficiency of neither declaration is challenged. On December 30, 1901, a judgment in the superior court of Plumas county in the sum of $493.93 and costs was rendered against the said Ellen Hohn in favor of the said N. O. Pauly. This was assigned by Pauly to R. J. McKeowen and L. James, and on March 25, 1902, execution was issued thereon and placed in the hands of the sheriff, who thereupon levied upon the property and gave notice that he would sell the same on May 22, 1902. Plaintiff brought the

action to enjoin the defendants, and each of them, "from selling, threatening to sell or offering for sale said premises or any part thereof."

The complaint was filed May 14, 1902, and a general demurrer on May 20th following, but for some reason not disclosed by the record, probably, though, because of the disqualification of the presiding judge of said superior court, the order overruling the demurrer was not made until July 31, 1905, and the answer was filed the same day. The cause was partially tried on the sixth day of December, 1905, and completed on the sixteenth day of November, 1906. Plaintiff prevailed and the appeal is from the judgment and order denying the motion for a new trial.

1. It is claimed that no person other than "heads of families" is entitled to a homestead or homestead exemption. The contention is grounded upon the language of section 1 of article XVII of the constitution, providing that "The legislature shall protect by law, from forced sale, a certain portion of the homestead and other property of all heads of families." But, as pointed out by respondent, the constitution does not "limit the power of the legislature to give homestead privileges to 'heads of families' only. It leaves the entire matter of such privileges, the method of selection of the homestead and the persons by whom the selection may be made entirely to the legislature, demanding only that at least heads of families shall be protected." The argument of appellants might possess merit if it were addressed to a provision of the constitution of the United States containing a grant of power to Congress, but in view of the familiar distinction between that instrument and a state constitution, it is apparent that the authority of the legislature, representing the law-making power of the people, to extend the homestead privilege to other persons than heads of families, is not withheld nor restricted by said provision of the constitution. It is said in *Beaton* v. *Reid,* 111 Cal. 487, [44 Pac. 167], that "the subject of homesteads is one wholly committed by the constitution to the legislature, with simply the general mandate that the latter shall protect it by law from forced sale. (Const., art. XVIII.) The extent of the right, therefore, and the mode of its protection, with the limitation of the

rights of creditors therein, are purely matters of legislative prescription, and something with which we have nothing to do but to construe and apply.''

In sections 1260 and 1266 of the Civil Code the legislature has provided clearly and amply for the case before us. In the former the enactment is that ''Homesteads may be selected and claimed: 1. Of not exceeding $5,000 in value by any head of a family; 2. Of not exceeding $1,000 in value by any other person,'' and the latter section, ''Any person other than the head of a family, in the selection of a homestead, must execute and acknowledge, in the same manner as a grant of real property is acknowledged, a 'declaration of homestead,' '' and the succeeding section provides what said declaration must contain.

It is admitted here that the value of the property was and is less than $1,000, and the declaration complied with the requirement of the statute. There can be, therefore, no question as to the unsoundness of the first position of appellants. (*Roth* v. *Insley*, 86 Cal. 141, [24 Pac. 853].)

2. We think the court did not err in denying the motion for a nonsuit. It is claimed by respondent that she might have rested upon the pleadings alone, as there is no denial in the answer of the allegations of the complaint as to her ownership of the property and her residence there, or as to the sufficiency of the declaration of homestead, and it is not denied that she ''has resided upon and claims said premises as a homestead,'' and furthermore, it is urged that whether or not the building within which plaintiff resided was primarily used for hotel purposes and whether her residence there was incidental to conducting such hotel business was a question of fact raised by appellants with the burden of proof devolving upon them. This need not be decided, however, as, considering the testimony in the light of the inferences most favorable to plaintiff and keeping in view the admitted facts, it ought to be held that the motion was properly denied. That the plaintiff actually resided in the building and that it was her only home is not questioned. We must assume that the declaration of homestead was made in the utmost good faith, as there is not a particle of evidence to the contrary. It would indeed be a harsh rule that, under

the circumstances disclosed here, would deprive this widow
of the homestead of trifling value simply because she used it
to make a precarious living.   If the question is to be resolved
by a determination of the comparative importance of the two,
it is more reasonable to hold that the business rather than
the home was the mere incident.

As we have seen, the trial took place years after the com-
plaint was filed and the plaintiff was not present.   Her coun-
sel therefore called a witness subpoenaed by the defense, who
testified: "I know the plaintiff, Ellen Hohn; have known
her about eighteen years.   During the time I have known
her, her residence was Onion Valley, at what is commonly
known as the Onion Valley House.   She resided there a part
of the year 1901, to my certain knowledge.   During the time
I knew her she did not reside anywhere else that I know of.
. . . It is fifteen years since I was over there.   I boarded there
at one time in July, 1890.   At that time the general nature
of the business that was being conducted there was the hotel
business. . . . When we were boarding there, the place was
open to the general public. . . . After John Hohn died she
continued to live there herself and conducted the place as
she had formerly."

In *Skinner* v. *Hall,* 69 Cal. 198, [10 Pac. 408], it is said:
"After making an actual residence upon property, one may
file a homestead upon it at the end of a day as well as at
the end of a month or a year.   So one may file and maintain
a homestead upon property which is partially rented out or
used for other purposes than his residence.   (*Ackley* v.
*Chamberlain,* 16 Cal. 181, [76 Am. Dec. 516] ; *Phelps* v. *Roo-
ney,* 9 Wis. 70, [76 Am. Dec. 244].) "

In the Ackley case, *supra,* it is declared, through Chief
Justice Field, that "In this case the building was intended
for a dwelling-house as well as a hotel. . . . The nature and
extent of the business did not interfere with its general char-
acter as a dwelling-house.   The keeping of boarders and ac-
commodation of lodgers and travelers were not inconsistent
with the main purpose of taking up the one hundred and sixty
acres and the erection of the building."

Judging from the description of the building it is quite
probable that here the original purpose was to prepare for

boarders and lodgers as well as for a home, but it is no different in principle from the Ackley case.

In *Heathman* v. *Holmes*, 94 Cal. 295, [29 Pac. 405], we find this language: "It would be strange, indeed, if the occupants of a house could not use part of it for family revenue, no matter how favorable the opportunity might be to do so, without forfeiting the home itself. There is nothing in the homestead laws which prohibits such use, and it has been settled here that 'the homestead statute is a remedial measure and should be liberally construed.' (*Schuyler* v. *Broughton*, 76 Cal. 524, [18 Pac. 436]; *Southwick* v. *Davis*, 78 Cal. 504, [21 Pac. 127].)" The court proceeds to distinguish *Laughlin* v. *Wright*, 63 Cal. 113, upon which appellants here rely, by calling attention to the consideration that "So far as the facts appear in that case, the family had never really made the premises their *bona fide* home." So in the case of *Maloney* v. *Hefer*, 75 Cal. 422, [7 Am. St. Rep. 180, 17 Pac. 539], there were two houses entirely separate and distinct from each other. The family lived in one of the houses and rented the other, and it was merely held that the homestead did not include the house in which the claimants did not live.

*In re Ogburn*, 105 Cal. 95, [38 Pac. 498], is in harmony with the foregoing, and holds that "the homestead character of the premises is not destroyed, either in whole or in part, by the fact that the husband and wife use part of the building for doing their work as artisans, where the work does not constitute such a pretentious business as to blot out the character of the place as a residence and home, or to make the latter merely incidental to the former."

In *Estate of Levy*, 141 Cal. 646, [99 Am. St. Rep. 92, 75 Pac. 301], after a review of the earlier cases, it is stated by the court, through Mr. Justice Angellotti, that "In no case has it been decided that where a portion of a building is dedicated to residence purposes, and is actually occupied by the claimant as the home of himself and his family, and such occupation is not merely incidental to the carrying on of some business in other parts of the building, the building and the land on which it is situated cannot be legally selected as a homestead."

In the case of *Harlan* v. *Schulze*, 7 Cal. App. 287, [94 Pac. 379], this court held that "where the claim of the homestead

is valid on its face, and there is nothing therein to indicate that it is to be used for any other purpose than as a residence for husband and wife, the incidental use by the wife of the home for purposes of prostitution does not destroy the right to the homestead.''

The facts here, we think, bring the case within the foregoing decisions.

3. In the defendants' answer it is alleged that ''since the commencement of this action plaintiff has abandoned any and all claim to said premises as a homestead, by a grant thereof executed and acknowledged by her, and by ceasing to reside upon the same.'' There was no finding as to the latter averment, but the allegation is immaterial as it is well settled that the homestead can be abandoned only in the manner pointed out in section 1243 of the Civil Code—that is, by the declaration of abandonment or a grant thereof. (*Simonson* v. *Burr,* 121 Cal. 582, [54 Pac. 87].)

It must be clear that no valid sale could be made of premises by virtue of the levy of an execution where neither the judgment nor execution creates any lien upon the property. The homestead being in full force and effect and there being no contention that the judgment is within the purview of section 1241, Civil Code, the docketing of the judgment created no lien (Code Civ. Proc., sec. 671; *Dam* v. *Zink,* 112 Cal. 91, [44 Pac. 331]) ; and the same thing is true of the levy of the execution. Section 1240 of the Civil Code provides that ''The homestead is exempt from execution or forced sale except as in this title provided.'' The attempted levy of an execution upon property that is exempt must be futile to affect any interest whatever of the homestead claimant, and the transfer of her interest a year afterward can have no effect to vitalize a void and nugatory proceeding taken to subject the property to seizure and sale.

In *Lubbock* v. *McMann,* 82 Cal. 230, [16 Am. St. Rep. 108, 22 Pac. 1147], it is declared that ''a judgment creates no lien upon property thus affected and a levy gives no right, except to inaugurate the proceedings for the admeasurement of such excess. . . . But though the sale of a homestead under execution conveys no title, it may create a cloud and involve the homestead claimant in litigation, and will therefore be enjoined.''

In *Benton* v. *Reid,* 111 Cal. 487, [44 Pac. 167], it is said: "The statute has provided the instances in which the homestead may be taken on forced sale, and the right to so take it will be strictly limited to those instances." Since the sale would be without authority of law, it is entirely inconsequential that the property was transferred after the bringing of the action.

4. Complaint is also made by appellants because of the finding that "said action has been continued in the name of the original party plaintiff and no objection thereto was made by either party to this action." As a matter of fact, the finding is true beyond question. The course pursued also seems to be authorized by section 385, Code of Civil Procedure, providing that "In case of any other transfer of interest, the action or proceeding may be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted in the action or proceeding." If the defendants desired the substitution, they should have made application therefor. They certainly have not been prejudiced because a righteous judgment has been secured against them in the name of the plaintiff rather than of her successor in interest.

5. Over the objection of defendants the court admitted in evidence the patent of the United States government to said Andrew Hersom, conveying the land in controversy. Appellants contend that this was error, since there was no issue as to ownership of the property, and it "was relied upon as evidence of respondent's residence upon the land in controversy." Respondent claims that it was introduced "merely to show that said Hersom had purchased the property under the homestead laws of the United States, and was some evidence of Hersom's intent with respect to the property." But, conceding that the ruling was technically erroneous, it could not have prejudiced appellants. The fact of respondent's residence was shown without conflict by other evidence, and as to ownership no one can complain of evidence in support of an admitted fact.

6. Under the decisions it cannot be held that the court abused its discretion in reopening the case for further evidence. The delay in the trial was great, but we cannot say it was inexcusable. The court, it is true, suggested the reopen-

ing of the case. This may be rather unusual, but we must assume that it was in furtherance of a desire to reach a just conclusion upon the merits, and this certainly is not to be condemned. Appellants had the same opportunity to offer additional evidence as respondent, and an earlier judgment against them would hardly have been received with greater favor. Besides, it is at least doubtful whether the additional evidence strengthened plaintiff's case in any material respect, and if the judge changed his mind after the first submission, it cannot be made the subject of just animadversion unless it should be shown that it was occasioned by some improper influence or led to prejudicial error. Nothing of the kind appears, and we conclude that the court's action was justifiable and within the spirit of the following decisions: *Preston* v. *Sonora Lodge,* 39 Cal. 116; *Miller* v. *Sharp,* 49 Cal. 233; *Clavey* v. *Lord,* 87 Cal. 413, [25 Pac. 493].

7. In rendering his opinion the trial judge said: "I think it is a fact the court can take judicial notice of, that in these mountain counties there is hardly a home but what is built more or less in a hotel fashion, run as a hotel, stopping place for the purpose of accommodating the public; it is really a part of the history of Plumas county, so that every place you go on the road you find a hotel and farm, and the same in the other counties, where there are some with more extensive structures than others, some built like hotels, great two-story houses constructed." It is often difficult to determine what things come within the category of matters of common knowledge of which the courts can take judicial notice, but it is doubtful whether any case can be found where it has been held to include the manner in which buildings have been constructed and the purposes for which they have been used in any particular county. If the doctrine can have such an extensive application, little would be left in the average case to be established by evidence. It would seem absurd for us to hold that the courts will take judicial notice of how the houses are constructed in Plumas county when we actually have no knowledge of it nor any accessible means of ascertaining the fact.

The cases cited by respondent do not reach the point.

In *Mahoney* v. *Aurrecochea,* 51 Cal. 429, the time of harvest was involved. So, also, in *Haines* v. *Sneidgar,* 110 Cal.

18, [42 Pac. 462].  In *People* v. *Mayes,* 113 Cal. 61, [45 Pac. 860], it was held that the court would take judicial notice of the time when the moon arose on a particular night.  *Ex parte Berry,* 147 Cal. 523, [109 Am. St. Rep. 160, 82 Pac. 44], was in relation to the meaning of the word "automobile."  These were all cases within the provisions of section 1875 of the Code of Civil Procedure.

*Edson* v. *Southern Pacific R. R. Co.,* 144 Cal. 189, [77 Pac. 897], is no nearer the mark, wherein it is guardedly said: "But we suppose a court may take judicial notice of facts of common knowledge, and, among others, of the fact that but a small percentage of those traveling between places of the relative situation of San Francisco and Fresno have any occasion to avail themselves of all or of any of the privileges which purchasers of limited tickets were compelled to stipulate away."  It would, of course, be unnecessary to prove what is so obvious, that the continuous travel between two such cities would be vastly greater than the intermitted.

But notwithstanding the court's error in this regard, as we conceive it, we are of the opinion that if it had not figured in the case, the conclusion would and should have been in favor of plaintiff, and that there was no prejudice to the substantial rights of the appellants.

As we think the judgment is just, it and the order denying the motion for a new trial are affirmed.

Hart, J., and Chipman, P. J., concurred.