[Civ. No. 3461. Third Appellate District.—April 16, 1928.]

CARRIE M. LORENZ, Respondent, v. A. D. HUNT et al., Appellants.

W. H. Carlin and W. E. Davies for Appellants.

Erling S. Norby for Respondent.

BARTLETT, J., *pro tem.*—This is an action asking that a homestead declaration be set aside and declared invalid and the lands described in the declaration adjudged subject to the lien of a judgment which plaintiff obtained against the defendant A. D. Hunt subsequent to the filing and recording of the homestead declaration by his wife, Luella Mae Hunt. The trial court set aside the declaration in so far as it affected one of the lots described, declared valid the homestead as to two adjoining lots, and also declared certain insurance moneys due defendants on account of the

destruction of a dance-hall that was on the lot held not within the homestead, subject to the lien of the writ of execution issued on plaintiff's judgment. Defendants appeal from that portion of the judgment declaring the homestead declaration invalid as to lot No. 28 of the subdivision of Tract No. 11 of the Yuba Gardens, situated about one mile south of Marysville in Yuba County, California.

As the facts in the case the trial court found that on May 8, 1925, judgment was entered in the superior court of Yuba County, California, in favor of plaintiff and against defendant A. D. Hunt for the sum of $2,500 and costs; that no part of this judgment has been paid; that a writ of execution thereon was duly issued and levied on July 17, 1925, on all the interest of defendant A. D. Hunt in and to two parcels of real property in Marysville, Yuba County, California, parcel No. 1 being lots 27 and 28 of Tract 11 of Yuba Gardens, and Tract No. 2 being commonly known as the "Shoemate Place," this parcel containing 87/100 of an acre of land; that defendant Luella Mae Hunt is and was at all times mentioned in the proceedings the wife of defendant A. D. Hunt; that after the levy of the writ of execution a large dance-hall on lot 28 of subdivision of Tract 11 was destroyed by fire; that certain insurance money payable to defendants on account of this fire damage has also been levied upon by plaintiff; that on April 25, 1925, defendant Luella Mae Hunt, as the wife of A. D. Hunt, filed and recorded a declaration of homestead on the properties above mentioned; that the parcels of land are contiguous, but were bought by defendants from different parties under different conveyances; that when the declaration was filed defendants were actually residing on the parcel of land known as "Shoemate Place," their dwelling-house being thereon; that a portion of this dwelling-house was used as a merchandising store, having in front of it a gasoline and oil station; that the only use made of lot 27 by defendants was for pasturing one cow and some Shetland ponies; that lot 28 was never at any time used for residence purposes or for the use of the home; that on lot 28 a large dance-hall was situated where defendants held Saturday night public dances for several years prior to the trial of this action, and until this dance-hall was destroyed by fire occurring some time after the levy of plaintiff's writ of execution. As

conclusions of law on the findings the court declared defendants entitled to a judgment validating the homestead on lot 27 of Tract No. 11 of Yuba Gardens and the diagonal plot of land adjoining lot 28 of Tract 11 of Yuba Gardens, and declaring plaintiff entitled to judgment declaring invalid the homestead as to lot 28 of the subdivision of Tract No. 11 of Yuba Gardens and adjudging this last lot subject to the lien of plaintiff's judgment and writ of execution and also adjudging the insurance moneys due defendants on account of the destruction by fire of the dance-hall on lot 28 subject to plaintiff's writ of execution levied thereon.

Whether or not the determination of the trial court that the homestead was invalid as to lot 28 of the subdivision of Tract 11 and the improvements thereon is the proper adjudication of that question under the evidence in the case is the only matter presented for decision on this appeal.

Section 1237 of the Civil Code specifies as the property of which a homestead consists: ''the dwelling house in which the claimant resides, and the land on which the same is situated, selected as in this title provided.''

The trial court in this case awarded defendants the land on which their dwelling-house was situated and said house. The facts in this case are very similar to those in the leading case in California relative to property that can be impressed with the privileges of homestead. (*Gregg* v. *Bostwick*, 33 Cal. 220 [91 Am. Dec. 637].) There a homestead declaration was filed covering four town lots in Napa City. The family lived on one lot and on the other lots were a bank or gymnasium building, a storehouse and several dwellings, all used by tenants of the homesteader. The action was one in equity to restrain the collection of a judgment against the homesteaders. As in this case, the trial court declared valid the homestead in so far as it covered the lot on which the residence of the family was situated, and declared that the residue of the properties was subject to sale under the execution issued on the judgment. In its opinion the court says: ''The primary object of all legislation upon the subject of homestead exemptions is not as claimed by counsel for the appellant, to exempt from forced sale a certain amount of the real estate of the head of a family, including the homestead, whether estimated by quantity or value, but to exempt the homestead, includ-

ing quantity or value, within the limits specified. . . . In all cases like the present two questions only are presented: First—what is the debtor's homestead as a matter of fact? or, in other words, how much of the land in question has he actually occupied and used as a homestead? and, Second—what is its value? Whatever, in fact, constitutes his homestead at the time of making the declaration and does not exceed five thousand dollars in value, must be declared exempt. Both are questions of fact, except so far as the first may rest on legal definition.

"Both in the Constitution and in the statute the word 'homestead' is used in its ordinary or popular sense—or, in other words, its legal sense is also its popular sense. It represents the dwelling house, at which the family resides, with the usual and customary appurtenances, including outbuildings of every kind necessary or convenient for family use and lands used for the purposes thereof. . . . Whatever is used—being either necessary or convenient—as a place of residence for the family as contradistinguished from a place of business, constitutes the homestead, subject to the statutory limit as to value. If, however, it is also used as a place of business by the family, which frequently happens, it may not therefore cease to be a homestead, if it would be necessary or convenient for family use independent of the business."

A similar question was presented in the case of *In re Allen,* 78 Cal. 293 [20 Pac. 679], where a homestead was set apart in an insolvency proceeding. The homestead declaration covered lots 4 and 5 of block 39 of the town of Chico. The lots adjoined each other and were worth together under $5,000. The family dwelling was on lot 5 and outhouses and chickenyard covered the rear portion of lot 4. The front portion of lot 4, 89 feet in depth, was used for business purposes. Upon this part of lot 4 was a two-story building which the court found had since its erection been used principally for business purposes, to wit: general blacksmithing, wagon building, and repairing, paintting, and varnishing wagons, the balance of the 89 feet being used in connection with the business. The judgment setting aside the two lots as a homestead was reversed, and the cause remanded for a new trial, the court basing its action

on the decision in the case of *Maloney* v. *Hefer*, 75 Cal. 422 [7 Am. St. Rep. 180, 17 Pac. 539], wherein it is said: "It is the principal use to which property is put, and not quantity, which furnishes the test in determining the question whether or not property is subject to dedication as a homestead." In the case last cited, the homestead was filed by a wife on a lot which had two houses thereon, declarant residing in the rear house and the front one being occupied by tenants when the homestead was filed. The action was to quiet title to the portion of the lot occupied by the front house, which had been sold and a sheriff's deed executed therefor. The court found the front house and premises were not the homestead and awarded the title to the purchaser at the sheriff's sale and the judgment was affirmed.

The facts in the case of *Guernsey* v. *Douglas*, 171 Cal. 329 [153 Pac. 227], are quite similar to the case at bar. This was an action brought to set aside a homestead declaration which covered adjoining uninclosed lots on one of which the family residence was situated. No use was made of the other lots except that the owner occasionally stored his painter's tools on them, sometimes pasturing a horse thereon and cut wild grass from them for horse feed. The trial court declared the homestead invalid as to the lots other than the one the dwelling-house was situated upon, and on appeal, the judgment was affirmed.

An analysis of the cases cited by counsel for appellant wherein homesteads upon property on which were structures used for business purposes as well as the dwelling-house occupied by the declarant and family will show facts different from those concerning the lot and improvements in question here. The properties in *Ackley* v. *Chamberlain*, 16 Cal. 181 [76 Am. Dec. 516], constituted a farm of 160 acres, upon which there was originally erected a dwelling-house, which subsequently was enlarged and used for both residence and hotel purposes. The court says: "A homestead is the residence of the family—is the place where the home is—and it would seem unreasonable upon first impressions, that premises should be regarded as a homestead, unless devoted principally to such residence and home. It would seem unreasonable, for example, that a gas factory should be impressed with the character of a homestead,

because the owner resided with his family in the upper story of the building, or that a storehouse should become exempt from execution, because the owner occupied the basement in the same way. The question whether property devoted chiefly to business purposes can be subject to a homestead claim is full of embarrassment, and we are not prepared to lay down any positive rule on the subject in the present case. In this case the building was intended for a dwelling house as well as a hotel. It was the intention of the owner in its construction to make it his residence. It was occupied by him and his family as such residence before it was ever used as a hotel. The nature and extent of the business did not interfere with its general character as a dwelling house. The keeping of boarders and accommodation of lodgers and travelers were not inconsistent with the main purpose of taking up the one hundred and sixty acres, and the erection of the building.''

The case of *Heathman* v. *Holmes*, 94 Cal. 291 [29 Pac. 404], differs widely in its facts from those in the proceeding under discussion. There the homestead declarant purchased the lot in question for the purpose of making a home thereon for himself and family and did erect such home and lived therein for some three years before erecting a large addition thereto and leasing the greater portion of the house for business purposes. He reserved for living purposes a portion of the building and continued to actually reside therein with his family. The fact that the building continued to be the *bona fide* residence of the claimant was made the test upon which the homestead character of the properties was upheld. The case of *Laughlin* v. *Wright*, 63 Cal. 113, announces the same conclusion that the *bona fide* use for residence purposes will overcome the objection that the properties are also used for business purposes.

In *Hohn* v. *Pauly*, 11 Cal. App. 724 [106 Pac. 266], the original purpose of the building was to provide both a home and a place for boarders and lodgers. There is no question as to the premises homesteaded being the *bona fide* home of the declarant when the homestead was filed.

The use made of the lot in question here, adjudged subject to plaintiff's judgment, is shown by the evidence to have been the maintaining thereon of a dance-hall by defendants where public dances for monetary remuneration

were conducted. The character of the business maintained is one entirely foreign to the conception of a home. The judgment in this case does not affect the homestead declared other than to limit its extent to the property occupied for residence purposes and the business of storekeeping and oil station and supplies which was being conducted on the Shoemate lot, when the declaration was made. In adjudging the Shoemate lot and lot 27 of the subdivision of Tract 11 a homestead and not subject to the plaintiff's judgment, the trial court gave as liberal a construction to the homestead law as should be given under the facts in this case and no sufficient reason appears for changing the adjudication made in this instance by that court.

The judgment is affirmed.

Hart, Acting P. J., and Plummer, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 14, 1928.

All the Justices concurred.