**TURNBEAUGH et al. v. SANTOS.**

No. 10747.

Circuit Court of Appeals, Ninth Circuit.

Dec. 18, 1944.

Ernest J. Torregano, of San Francisco, Cal., for appellants.

Gumpert & Mazzera and J. Calvert Snyder, all of Stockton, Cal., for appellee.

Before DENMAN, STEPHENS and BONE, Circuit Judges

DENMAN, Circuit Judge.

This is an appeal from an order of the District Court affirming the order of the referee holding invalid a claim of exemption for a homestead made in the proceeding in bankruptcy initiated by appellants. The District Court gave no opinion.

Appellant Orvey Turnbeaugh in August, 1940, purchased a lot of land in San Joaquin County, California, about a quarter of a mile from the town of Ripon, upon which lot he intended to make a home for his wife and family. It was about an acre and a half in area lying alongside an irrigation ditch. It is not questioned that when he bought the land he intended to build and did thereafter build thereon a six room house, a garage, and a well.

At the time of the purchase of the land the family, consisting of appellants and their two grown sons and younger daughters, were residing in a rented house some distance from the lot. The appellants' intent to give up this rented place as their residence after the purchase of the lot was next shown in their consultation with the manager of the Stockton Guarantee Title Company regarding the homesteading of the property. He advised them they would have to construct a building on the premises and live in it as their home, including sleeping in the building.

Appellant husband was a contracting painter by trade. He bought tools, lumber and cement, and with the aid of his sons he built a one story frame building with concrete foundations and floor 22 by 24 feet in area, to be used first as a residence for himself and wife and later as a garage. They bought a three piece bedroom set including a bedstead and mattress, also a library table and two rugs for the concrete floor, with which they furnished the building, and also at first an oil heater and later a wood stove heater. During this period appellants' intent to make their home on the lot was further shown by their arrangement of a loan for the construction of the six room building and the well. The well was dug during the month of December. Till then they brought their drinking water to the homestead from the rented place, but obtained their water for laundering from the irrigation ditch. The second dwelling was finished on May 31, 1941.

On the afternoon of November 14, 1940, appellants moved into this single room dwelling and slept there that night and continuously every night thereafter during the construction of the larger six room building until its completion. On the day following the first night's occupancy of the premises, November 15th, Mrs. Turnbeaugh executed her declaration of homestead of the property, which was filed on November 20, 1940.

Mr. Turnbeaugh some time afterward became ill and unable to continue his trade as contracting painter and on August 8, 1942, a year and eight months after the declaration of homestead, he and Mrs. Turnbeaugh filed the petition in bankruptcy. They claimed the homestead as an exemption under Bankruptcy Act § 6, 11 U.S.C.A. § 24.

The trustee recognized the exemption. This was contested by appellee, a creditor for a debt created subsequent to the declaration for moneys used by the appellant in his contractor's business. There was a hearing before the referee who held the exemption not established and ordered it denied. The District Court affirmed the order and this appeal followed.

The hearing was conducted by the referee with a complete misapprehension of one of the underlying principles of the homestead law, and one of the findings in a substantial aspect is grossly unfair to appellants. Over the protest of appellants' attorney, appellants were subjected to a gruelling cross-examination as to the husband's past debts existing at the time the wife made the homestead declaration, on the theory that a homestead declarant is acting in fraud of creditors in seeking to establish a homestead. To the contrary the very purpose of the homestead law is to afford a residence to debtors, which is free from their debts. This elemental underlying principle is summarized in California Jurisprudence, v. 13, pp. 477, 478,

a much cited section. Cf. Montgomery v. Bullock, 11 Cal.2d 58, 77 P.2d 846; Yager v. Yager, 7 Cal.2d 213, 217, 60 P.2d 422, 106 A.L.R. 664; Gray v. Brunold, 140 Cal. 615, 620, 74 P. 303. The quoted section reads: "The doctrine bearing upon conveyances made to hinder, delay and defraud creditors has no application to the creation of a homestead. A homestead is not invalid because the declarant is in debt, or declared the homestead to protect it from existing debts. This is the very purpose of the homestead laws."

There is nothing in the evidence which warrants the assertion of the appellee's brief that the appellants simulated a residence "for the purpose of defrauding and defeating creditors."

It is an unfair statement of the referee that "The evidence is vague and conflicting as to whether bankrupts actually slept in the garage prior to and at the time of the declaration of homestead." This fact was established by the uncontradicted and unshaken testimony of the appellants and one of their neighbors and one of their sons. Another son was waiting to testify and appellants' attorney stated his evidence would be the same as his brother's. The referee with the demeanor of these witnesses fresh in mind stated: "Well, I am satisfied that they were sleeping there. * * * Well, they say so, they say so." Appellants' attorney then stated, "If the court is desirous of obtaining or hearing any more evidence of it—", to which the referee replied "No." The referee further stated: "There is no question about it in the Court's mind, there is no question about that. Now, if you have any other points, other than the matter of their sleeping there and having their furniture there on that night, and having their lunch there while he was building the house."

With these statements of the referee the second son was not called as a witness, yet we find his remark that the evidence is vague and conflicting.

■ We do not agree. The testimony is clear, convincing and uncontradicted, that the appellants furnished the one room house and slept there before the declaration was recorded and afterwards till the second house was finished. Though the place was heated first by the oil and shortly after by the wood stove, and the cement floor covered with rugs, the winter nights spent there without running water or toilet conveniences, when appellants could have remained in the rented house in comparative comfort, are strong evidence of appellants' intent to give up that place as their residence and make their home on the homesteaded property.

The California Civil Code provides for a homestead as follows:

"1263. Contents of declaration of homestead. The declaration of homestead must contain:

"1. A statement, showing that the person making it is the head of a family, and, if the claimant is married, the name of the spouse; and, when the declaration is made by the wife, showing that her husband has not made such declaration and that she therefore makes the declaration for their joint benefit;

"2. A statement that the person making it is residing on the premises, and claims them as a homestead;

"3. A description of the premises;

"4. An estimate of their actual cash value;

"5. Such declaration of homestead may further contain a statement of the character of the property sought to be homesteaded with sufficient detail to show that it is a proper subject of homestead, and that no former declaration has been made, or, if made, that it has been abandoned and if it contains such further statement and the declaration is supported by the affidavit of the declarant, annexed thereto, that the matters therein stated are true of his or her own knowledge, such declaration, when properly recorded, shall be prima facie evidence of the facts therein stated, and conclusive evidence thereof in favor of a purchaser or encumbrancer in good faith and for a valuable consideration."

It is thus provided that the declaration of the wife that she is "residing on the premises, and claims them as a homestead * * * shall be prima facie evidence of the facts" so stated. Section 1833 of the California Code of Civil Procedure provides:

"1833. Prima facie. Prima facie evidence is that which suffices for the proof of a particular fact, until contradicted and overcome by other evidence. For example: the certificate of a recording officer is prima facie evidence of a record, but it may afterwards be rejected upon proof that there is no such record."

We do not agree that there is evidence overcoming the prima facie evidentiary ef-

fect of the statements of the declaration and the acts and their intent as shown above. Section 1263 does not require that a declarant shall take his family with him to establish a residence on the property sought to be homesteaded. It requires no more than that the "person" making the declaration, here the wife, "is residing on the premises."

The leading California case on the requirements for residence, not mentioned in the referee's opinion or the order of the court, is Skinner v. Hall, 69 Cal. 195, 198, 10 P. 406, 407. There the declarant, the husband, slept but one night and had no meals on the premises which had just been restored after a fire, and recorded his declaration the next day. His wife and child were living with her mother at another house, where he had resided while the restoration proceeded. The court stated the California law as follows: "Conceding, as claimed for the appellants, that he went back to the house for the purpose of qualifying himself to file a new declaration, still it does not follow that his residence was not actual. He had taken up his abode in the house, and had slept there one night. His wife and child did not go with him, but it was not absolutely necessary that they should. One may have an actual residence in a house, though his family be away, and he take his meals elsewhere. Nor is the fact that he had slept there but one night decisive of the question. After making an actual residence upon property, one may file a homestead upon it at the end of a day, as well as at the end of a month or a year. So one may file and maintain a homestead upon property which is partially rented out, or used for other purposes than his residence. Ackley v. Chamberlain, 16 Cal. 181 [76 Am.Dec. 516]; Phelps v. Rooney, 9 Wis. 70 [76 Am.Dec. 244]."

■ None of the facts relied upon by appellee are inconsistent with this actual and intended residence in the house on the' homesteaded lot. The young girls lived with their adult brothers at the rented house which the parents had left, as did the wife and child in the Skinner case. Appellants had some of their meals with their children at the former residence and some at a restaurant in Ripon. All their luncheons were eaten on the homestead. Other furniture than that used on the homestead and some of the clothing owned by appellants was at the rented house, but one may have a residence though he eat elsewhere and have many of his personal effects elsewhere, viz., Skinner v. Hall, supra. The appellee's counsel brought out on cross-examination that when the girls had flu and evidently were considered beyond the care of the elder brothers, instead of the mother joining them at the rented house, they were brought to the house on the homestead. The referee considered this uncontradicted evidence unlikely but based his inference on the erroneous statement that "it was an unheated garage," whereas the uncontradicted evidence of several witnesses is that the house was heated by a wood burning stove.

■ We hold that there is no evidence overcoming the effect of the declaration of homestead; that at the time of its execution appellants resided on the premises described in the declaration; and that the district court and referee erred in denying their claimed exemption. The order appealed from is reversed and the case remanded with instructions to enter an order in accord with this opinion.

Reversed.